262 A.2d 630.

MANUEL A. DECARVALHO *vs.* HENRY GONSALVES *et al.*

FEBRUARY 23, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is a stockholder's suit in which the plaintiff, in seeking an accounting and injunctive relief, alleges that the individual defendants have violated their fiduciary duty as directors of one corporation by conspiring to divert profits, business opportunities and good will from the corporation in which the plaintiff holds stock to a second

corporation in which the individual defendants are the majority stockholders. We have at the defendants' request, issued certiorari to review the legality of the order of the Superior Court entered pursuant to Rule 34 of the Superior Court Rules of Civil Procedure directing the individual defendants and one of the corporate defendants to produce an extensive variety of business and financial records for the inspection and reproduction by the plaintiff, his attorneys and his accountants.

The defendants are two individuals — Henry Gonsalves and Joseph Lewis—and two Rhode Island corporations— Gonsalves Import-Export Corporation and Henry Gonsalves Co. Hereafter, we shall refer to the plaintiff and the two individual defendants by their last names and to Gonsalves Import-Export Corporation as "the import corporation" and to Henry Gonsalves Co. as "the sales corporation." In our consideration of this cause, we have read with considerable care the depositions of all three individual litigants.

In 1947, Gonsalves and Lewis became partners in a wholesale grocery business which had been originally established some years prior to this time by Gonsalves. The partners sold their goods to numerous retail stores located in Rhode Island, Connecticut and Massachusetts. One of the specialties carried by the partnership was a line of fish, cheese and olive oil imported from Portugal. The partners purchased these items from importers located in New York and Boston. Sometime in 1950, one of the importers who supplied the olive oil decided to bypass the partnership and sell directly to the retailers. This occurrence confronted Gonsalves and Lewis with the problem of obtaining a new source of supply. The partners thereupon turned to DeCarvalho for assistance.

At this particular time DeCarvalho was a citizen of Portugal living in Rhode Island and he had been designated as the Portuguese Consul for this state. The partners felt

that DeCarvalho was the one person who could establish the necessary rapport with the Portuguese exporters so that they would be assured of a continuous flow of foods which played a somewhat important part in the partnership's activities. Accordingly, the import corporation was organized on July 18, 1950. All three men invested $5,000 in the corporation and each received 100 shares of stock. Each man became a corporate director and an officer. DeCarvalho was the corporation's president and secretary. The record shows that thereafter the necessary European contacts were made and the imports began to arrive at the corporation's plant.

During the ensuing seven years, the partnership continued its distribution and sale of food products. In December 1957, the partnership was incorporated under the name of the sales corporation. Gonsalves and Lewis became the directors and officers of the new corporation. DeCarvalho's sole financial interest was in the import corporation. His corporate income was derived from a fiscal arrangement whereby the partnership, and later the sales corporation, would purchase the goods from the import corporation and then sell the imports to the retailers and periodically the partners or the sales corporation would remit 12½ per cent of the gross retail sales amount. Seven and one-half per cent of this amount was allocated equally to the three directors and the remaining five per cent was used by the parties to pay the costs of distributing the goods including transportation and delivery expenses. The trucks that delivered the imports to the retail outlets were owned by the partnership.

This arrangement continued unchanged for 11 years. During this period of time, DeCarvalho attended and graduated from law school. He became a member of the Rhode Island Bar in 1960. In 1961, a new policy was evolved whereby the import corporation became the exclusive food

broker for the sales corporation. All imports were to be sold to the sales corporation for a commission of five per cent of the invoice cost of the goods. Later, this commission was reduced to four per cent and finally in 1966, it reached the level of 2.5 per cent. DeCarvalho was given the commission as payment for the various services, legal and otherwise, he performed for the corporation. While DeCarvalho admits that in 1965 or 1966 there was a small year-end distribution of the import corporation's surplus between the stockholders, he contends that Gonsalves and Lewis have, by the use of false representations and by virtue of their interlocking directorates, siphoned off profits and various other benefits which rightfully belonged to the import corporation. This action was begun in April 1967.

The individual defendants deny that the sales corporation or the partnership ever competed with the import corporation. They claim that the import corporation has never sold its products directly to any of the customers served by the sales corporation. DeCarvalho, they say, attended all regular meetings of the corporation's board of directors and that he concurred in all the financial arrangements made between the two corporations. In his deposition Gonsalves stated that the sales corporation had gross sales in each of the years 1965 and 1966 of over a million dollars. He contends, however, that the sale of food imports is just one phase of the sales corporation's operations.

Before considering the merits of the instant petition, we would note that DeCarvalho's motion to produce was heard at a time when Rule 34 required a showing of "good cause." On March 10, 1969, the Superior Court adopted a recommendation made several years ago by the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States when the court amended Rule 34 and deleted therefrom the requirement that the moving party have "good cause" to inspect the desired documents. We

shall therefore examine the correctness of the order to produce defendants' records in the light of the amended rule. See *Novogroski* v. *O'Brien,* 106 R. I. 490, 261 A.2d 283.

The portions of the disputed order which are pertinent to this proceeding read as follows:

"Ordered:

"1. That the said Defendants and each of them forthwith produce and permit the Plaintiff, his attorneys and accountants, or any of them, to inspect and to copy:

"(a) Each or any of the following books and documents of said Henry Gonsalves Co. or any predecessor business, including any copartnership between the individual Defendants, Henry Gonsalves and Joseph Lewis, for the terms of the beginning of said business or businesses to the present date: General ledgers, cash receipt journals, cash disbursement journals, purchase journals, accounts receivable ledgers, accounts payable ledgers, sales books, inventory control cards, copies of income tax returns (Federal and State), files of correspondence with suppliers of foods for sale, check-books, periodical and annual financial statements, lists of suppliers and customers, profit and loss statements, or books or ledgers equivalent thereto, and any articles of copartnership existing between said Henry Gonsalves and Joseph Lewis.

"(b) Each or any of the following documents of the individual Defendants, Henry Gonsalves and Joseph Lewis, since they have been stockholders, directors and officers of the Defendant, Gonsalves Import-Export Corporation, to the present time: Checkbooks, individual income tax returns and supporting records."

The order also provided that plaintiff or his agents should not disclose the information contained in the records to any third parties and that the examination could take place in the offices of DeCarvalho, his attorneys, or his accountants

so long as Gonsalves and Lewis or their agents were present during the examination.

Rule 34 provides for the production, inspection and copying of writings, documents, photographs and many other materials. The scope of the things which may be required to be produced, however, is expressly governed by Rule 26(b). This latter rule allows the discovery of any matter, not privileged, which is relevant to the subject matter in the pending action. An objection that the material sought will be inadmissible at the trial is not well taken if the material sought appears to be "reasonably calculated to lead to the discovery of admissible evidence."

Accordingly then, a motion to produce documents will be granted on a showing that the desired documents are relevant to the subject matter of the pending suit. The rule, however, provides some degree of protection to the person upon whom the request[1] to produce has been served. Rule 34 has specifically incorporated by reference the provisions of Rule 30(b). Rule 30(b) states that upon a showing of good cause, the Superior Court may control the scope of the inquiry by limiting the matters to be included therein and "* * * may make any other order which justice requires to protect the party or witness from annoyance, undue expense, embarrassment, or oppression." In the Superior Court there was not only total opposition to DeCarvalho's request but the court was also asked to issue some type of protective order under the provisions of Rule 30(b).

In this proceeding, the individual defendants and the sales corporation contend that there is no legal basis for the

---

[1]The 1969 amendment of Rule 34 also eliminated the necessity of the filing of a motion to produce. As amended, the rule now allows a party seeking discovery of documents and things, or the inspection of land, or other property to serve a request seeking the same on the other party. The party served must comply therewith or object thereto in writing. After service and filing of the objection, the requesting party must then seek a court order compelling discovery.

Superior Court's order and that the order as entered is burdensome and oppressive.

We are bound under the new rules to give the concept of relevancy, as it applies to discovery purposes, a liberal application. The test to be applied is whether the material sought is relevant to the subject matter of the suit, not whether it is relevant to the precise issues presented by the pleadings. The scope of relevancy in discovery proceedings is much broader than when considering the relevancy of evidence adduced at a trial. *Independent Productions Corp. v. Loew's, Inc.*, 30 F.R.D. 377 (S. D. N. Y. 1962). Although we believe that the new Rules of Civil Procedure of the Superior Court with their pretrial discovery techniques have furnished a litigant with a fishing license, the like of which was not available under the former practice in this jurisdiction, the litigant may not cast his line until he has shown the requisite materiality of his request to produce. See 1 Kent, *Rhode Island Civil Practice,* §34.3, at 281.

In determining the subject matter of the pending suit, we have examined DeCarvalho's complaint, his motion to produce, its accompanying affidavit, and the depositions of each of the individual litigants. The affidavit acknowledges that DeCarvalho had filed an earlier motion to produce which had been denied without prejudice but states that the depositions which were taken after the denial indicate that the material he seeks is relevant to this case. While the gravamen of his complaint concerns the individual defendants' alleged conspiracy to compete with the sales corporation, the depositions show that there was relative peace and calm between the parties until 1962. The complaint states that until 1962 the import corporation made sales directly to the customers with net profits, good will, and other incidental benefits accruing to its stockholders. The reduction in dividends or commissions did not begin until sometime in 1962. DeCarvalho asserts that he gave his consent

to these reductions because of the false representations made by Gonsalves and Lewis relative to an alleged business decline.

We believe that DeCarvalho has described the items he wishes to inspect "with reasonable particularity" and that the proof required to adjudicate his suit can only be secured by an inspection of the type of records he has set forth in his motion. However, having in mind the subject matter of the litigation and time period during which plaintiff has charged Gonsalves and Lewis with a breach of their fiduciary duty, it is our judgment that the fishing license given plaintiff by the Superior Court must be somewhat limited. The order entered is too broad, immaterial in some respects, and places an undue burden on Gonsalves, Lewis and the sales corporation.

We think the Superior Court erred in not imposing a limit on the time period to be covered by the described documents. The order as entered requires the production of records of the sales corporation or *any predecessor business.* Gonsalves started this business as an individual sometime prior to his becoming a partner with Lewis in 1947. The partnership was operating before the import corporation was organized in 1950. We fail to see the materiality of any of defendants furnishing any of the requested records for the time prior to 1950. From our study of the depositions, we cannot perceive any untoward discord among the three directors until 1962. Any alleged derelictions by the directors occurred between 1962 and 1967. We are of the opinion that the period which is relevant to plaintiff's charges are the years from 1961 on through and including 1967. The year 1961 appeared to be a rather harmonious time for all the litigants. The plaintiff may compare defendants' records which are pertinent during this period of tranquility with those of the alleged stormy years that followed.

In *Novogroski* v. *O'Brien, supra,* we expressed our concern about allowing a party who invokes Rule 34 to take an unwarranted look at the income tax returns of his adversary. Here the order allows plaintiff or his agents to peruse the returns of the individual defendants. They are joint returns of each defendant and his wife. Much of what the returns contain may be totally irrelevant to this pending suit. It is our belief that defendants should submit their returns to a justice of the Superior Court for his inspection. The justice shall examine the returns and mask out or excise such portions thereof as will not assist plaintiff in the preparation of his suit and then the returns can be made available to plaintiff.

The defendants' apprehension over the disclosure of the identification of their customers is justifiable. While the order prohibits the disclosure of any of the information obtained from defendants' records, this prohibition does not go far enough. Any new order which is to be entered should specifically provide that any information gained from the records made available to plaintiff, his attorneys, or accountants is to be used solely for the purposes of this litigation and for no other purpose. See *Turmenne* v. *White Consol. Industries, Inc.,* 266 F. Supp. 35.

Finally, we believe that the portion of the order which directs the defendants to deliver their records to the plaintiff or his representatives is totally unreasonable. The sales corporation apparently has had an annual volume of sales of over one million dollars. The records which go with this amount of business, to put it mildly, must be voluminous. All the defendants are obligated to do is to make the records available to the plaintiff. There is no need to have them transported to the plaintiff's office. It will be the plaintiff's task to go to the sales corporation's office and make his inspection of the defendants' records at that location. Inspection should be made in the presence of the defendants

or their agents and in such a manner as to afford the least interference with the ongoing business of the sales corporation.

The petition for certiorari is granted, the Superior Court's order to produce is quashed to the extent that it is inconsistent with this opinion, and the papers in the case are ordered returned to the Superior Court with our decision endorsed thereon.

*Arcaro, Belilove & Kolodney, Abraham Belilove,* for plaintiff.

*John F. Sherlock, Jr., Francis R. Foley,* for defendants.