Alphonse R. CARDI, Jr., Patricia M. Cardi, Vera Lee Sharoff, Elizabeth Cardi Talwar, Carol Ann Troncoso, AKT, Inc., and Sara Enhancing Realty, Inc.

v.

MEDICAL HOMES OF RHODE ISLAND, INC., Akshay K. Talwar, individually, and Akshay K. Talwar, in his capacity as President of Medical Homes of Rhode Island, Inc.

v.

Alphonse Cardi, M.D., Joseph A. Abbate, Michael Calabrese, Mitchell Sharoff, and Alex Troncoso.

No. 98–502–M.P.

Supreme Court of Rhode Island.

Oct. 20, 1999.

Matthew F. Medeiros, Paul M. Sanford, Providence.

Gerald C. DeMaria, William Landry, Bruce Gladstone, Providence.

### ORDER

This case came before the Court on September 22, 1999, pursuant to an order that directed the parties to appear and show cause why the issues raised in this certiorari petition should not be summarily decided. We issued the writ in order to review a discovery order of the Superior Court that granted the defendant's motion for the issuance of a commission to take the depositions of 67 out-of-state banking institutions. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown. Therefore, we shall decide the issues raised by the parties at this time.

This case involves a lengthy and embittered family dispute stemming from the divorce of Elizabeth Cardi Talwar (Elizabeth) and Akshay Talwar (Talwar). Elizabeth and four of her siblings have brought suit against Talwar and Medical Homes of Rhode Island, Inc. (Medical Homes), a corporation in which Talwar owns an interest. Medical Homes owns and operates the Briarcliffe Nursing Home in Johnston, Rhode Island (Briarcliffe). They see, to have shares of Medical Homes stock which they allegedly purchased registered on the books of the corporation. In turn, the defendants have filed a counterclaim against the plaintiffs and a third-party complaint against Alphonse M. Cardi, M.D. (Dr. Cardi), Elizabeth's father and the former owner of Medical Homes, as well as three of his sons-in-law and his stockbroker, claiming that Dr. Cardi has used numerous people, including his children and their spouses, as straws to purchase stock in Medical Homes in violation of a contract between Talwar and Dr. Cardi.

During the discovery phase, the defendants requested permission to take the depositions of certain out-of-state banking institutions in order to determine who actually purchased the shares and certain parcels of land adjacent to Briarcliffe. The defendants claim the depositions are necessary due to the uncertainty of the plaintiffs and third-party defendants as to how they obtained the funds to make these purchases. The Superior Court issued a discovery order granting the defendants permission and providing for a commission to take the depositions of the numerous out-of-sate banking institutions. The plaintiffs sought interlocutory review of the discovery order claiming that the issuing judge abused her discretion, and that the discovery request is unduly burdensome, abusive, and not likely to lead to the discovery of admissible evidence.

The sole issue to be decided in this case is whether the trial justice abused her discretion by granting the discovery request. Although we have recognized that a trial court has broad discretion in deciding discovery matters, and a decision to allow or deny discovery is reviewable only

for abuse of discretion, *Bashforth v. Zampini*, 576 A.2d 1197 (R.I.1990), we conclude the order in this case constitutes an abuse of discretion.

The discovery sought by defendants extends from 1976 to 1998, and includes all the bank records of 12 individuals and 2 entities for accounts that may or may not have been maintained at 67 banking and financial institutions, with the exception of deposit slips, withdrawal slips, and cash transactions. The defendants allege that this broad range is necessary in order to uncover a "pattern" of sham transactions allegedly made by Dr. Cardi to cover up his actual ownership of Medical Homes stock and the obfuscation of the parties. However, most of the transactions relevant to this case, the stock and land purchases at stake in this litigation, occurred between the years 1987 and 1991.

In *DeCarvalho v. Gonsalves*, 106 R.I. 620, 262 A.2d 630 (1970), similar broad discovery was requested by the plaintiff in a stockholder's suit. The plaintiff-stockholder, DeCarvalho, claimed that the directors of the corporation had violated their fiduciary duties by diverting profits and opportunities from the corporation. Although the alleged "derelictions" of the directors occurred between 1962 and 1967, DeCarvalho sought to discover items from as early as 1947. The test we adopted to determine relevancy for discovery purposes is "whether the material sought is relevant to the subject matter of the suit, not whether it is relevant to the precise issues presented by the pleadings." 262 A.2d at 634. We failed to see the materiality of any of the documents in *DeCarvalho* except those from the time period "relevant to plaintiffs charges," and concluded that the "fishing license given plaintiff by the Superior Court must be somewhat limited." 262 A.2d at 635.

Although the information sought in the present case may be relevant to the particular claims raised in the defendant's pleadings, the discovery order is overly broad in light of the subject matter of the litigation, the relevant time periods, and the sheer number of institutions sought to be deposed without any evidence that any party actually maintained an account at a particular institution. Therefore, in granting defendant's request to take the depositions of 67 out-of-stated banking institutions, the trial justice abused her discretion.

For the foregoing reasons, the petition for certiorari is granted, and the order of the Superior Court is hereby quashed. The papers in this case may be remanded to the Superior Court with our decision.