DECISION ON PLAINTIFF'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS
In the above captioned asbestos litigation matter, Plaintiff James Sherman seeks to examine certain business records kept by Defendant Eastern Refractories Corporation, Inc. (ERCO).
Plaintiff Sherman filed suit against several manufacturers and distributors of products containing asbestos to which he claims he was exposed over the course of his career. Among the places where Plaintiff Sherman worked with these asbestos-laden materials was Ciba-Geigy (CG), a manufacturing facility located in Rhode Island. Defendant ERCO supplied materials to CG. At some point in the 1970's, while Plaintiff was working at CG, Defendant ERCO began compiling comprehensive records relating to the items it sold to its customers, including CG.
After the existence of these records was established, Plaintiff Sherman issued a request for production pursuant to Rule 34 of the Rhode Island Rules of Civil Procedure. Subsequently, Defendant ERCO provided information regarding only one of the many transactions it consummated with CG. Defendant ERCO, by its president David S. Feinzig, has repeatedly maintained that it has reviewed all of its records and that it has provided the Plaintiff with the only document in its possession relating to CG in which any asbestos products were mentioned. Plaintiff Sherman found this response unsatisfactory.
This Court conducted two hearings relating to this dispute on consecutive Wednesdays in April 2002.[1] On both days, Charles F. Ferguson testified on behalf of the Plaintiff. Ferguson testified that he had been a friend and co-worker of the Plaintiff for more than thirty years. Moreover, Ferguson testified that he and the Plaintiff had worked together at CG in the 1960's and 1970's. Specifically, Ferguson testified that he remembered using products that came in boxes containing either printing or labels that indicated they came from ERCO. On cross examination, Defendant's counsel primarily challenged Ferguson's identification of the packaging. Defendant's counsel also tested Ferguson's memory of the events of 30 years ago, his relationship with the Plaintiff, his relationship with Plaintiff's counsel, and his involvement in other asbestos litigation matters (including his own asbestos-related law-suit).
ERCO's president, David S. Feinzig, also testified. His tenure with ERCO began in 1948. Over the years, he has served the company in several different capacities. In the 1960's and 1970's, Feinzig held a professional engineer's license in Massachusetts. His term as president began in 1973. Feinzig testified that ERCO did no business with CG before 1975. After 1975, Feinzig testified that ERCO did mostly contract work at CG. Therefore, it was unlikely that ERCO occasionally shipped individual products to CG, as Ferguson suggested, during the 60's and early 70's and before ERCO started to keep detailed job records. Moreover, Feinzig testified that ERCO never had a pre-printed carton or other packaging as described in Ferguson's testimony.
Feinzig also testified regarding the method he used to review ERCO's job files for materials containing asbestos. Because of his experience in the business, Feinzig asserted that he had "built up a certain expertise and knowledge about what products contained." (Transcript, April 22, 2000 Hearing at page 21, lines 23-25.) Armed with this special knowledge, Feinzig testified that he personally reviewed each job file relating to ERCO's dealings with CG to determine whether any asbestos products were involved. Using this method, Feinzig reiterated his conclusion that only one job file, Number 25095, contained any mention of a product that contained asbestos. Id.
On cross examination, Feinzig testified that any sales records produced prior to his tenure as president of ERCO, if they had ever existed, were destroyed. Then, Plaintiff's counsel challenged Feinzig's "special knowledge" of asbestos products by questioning Feinzig about an appendix attached to ERCO's answers to interrogatories, which were signed by Feinzig. When asked whether the products listed in this appendix contained asbestos, Feinzig was unable to answer with any degree of certainty. (See generally, id. at pages 27-32.) Feinzig testified that at some point during the seventies, the Occupational Safety and Health Administration (OSHA) mandated the removal of asbestos from all products. (Id. at page 30, lines 13-16.) However, he also testified that it took longer for some manufacturers to comply with the OSHA regulations, depending on the availability of substitute materials. Therefore, Feinzig testified that only the manufacturer would know for sure exactly which products contained asbestos at any given point in the 1970's. (Id. at page 28, lines 1-8.)
Plaintiff's counsel argues that the documents sought are highly relevant. At trial, product identification and exposure will be a highly contested issue. Therefore, Plaintiff's request for production of these files could lead to valuable, admissible evidence on this issue. If these documents were not discoverable, Plaintiff's ability to identify products supplied by the Defendant would rest solely on the testimony of Feinzig, an adverse witness who would be the only witness who had reviewed those files for evidence of asbestos-containing products. Plaintiff contends that this Court need not resort to the liberality of the discovery rules, generally, to determine whether Plaintiff is entitled to view these documents. Instead, because Plaintiff's request is limited in scope and time to business records relating to CG during Plaintiff's employment at the facility, Plaintiff asserts that he is entitled to obtain those records for an independent review to determine whether they contain evidence of products containing asbestos.
Defendant's counsel argues that the Plaintiff has failed to establish the existence of any documents relating to asbestos products that have not been produced. According to the Defendant, Ferguson's testimony failed to identify any product or any packaging that would lead the Court to believe that ERCO regularly supplied CG with products containing asbestos. Moreover, ERCO asserts that the production of such voluminous records, if ordered in this case as well as in a large number of other cases, would represent a substantial burden upon the Defendant. For all of these reasons, Defendant ERCO asks this Court to rely on Feinzig's testimony and to deny the Plaintiff's discovery request.
 Standard of Review 
In granting or denying discovery orders, a justice of the Superior Court has broad discretion. Corvese v. Medco Containment Servs.,687 A.2d 880, 881 (R.I. 1997). The Supreme Court will not disturb such a decision save for an abuse of discretion. Id. at 881-882.
The Superior Court Rules of Civil Procedure provide for the production of documents and things. Super.R.Civ.P. Rule 34. Rule 34 states, in pertinent part:
 "(a) Scope. Any party may serve on any other party a request (1) to produce and permit the party making the request, or someone acting on the party's behalf, to inspect and copy, any designated documents (including writings, drawings, graphs, charts, photographs, phono-records, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form), or to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served . . .
 (b) Procedure. . . The request shall set forth the items to he inspected either by individual item or by category, and describe each item and category with reasonable particularity. The request shall specify a reasonable time, place, and manner of making the inspection and performing the related acts. . .
 The party upon whom the request is served shall serve a written response within 40 days after the service of the request, except that a defendant may serve a response within 60 days after service of the summons and complaint upon that defendant. . . The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for objection shall be stated. If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts. . .
 A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request."
Rule 26(b) establishes the scope of such discovery and creates limits on its use. It provides, in pertinent part:
 "Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
 (1) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
 The frequency or extent of use of the discovery methods set forth in these rules shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, the parties' resources, and the importance of the issues at stake in the litigation. The court may act upon its own initiative after reasonable notice or pursuant to a motion under subdivision (c)."
The extent of discovery is also somewhat constrained by Rule 401 of the Rhode Island Rules of Evidence, which defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Callahan v. Nystedt,641 A.2d 58, 60 (R.I. 1994). In Callahan, defendant attorney was employed by plaintiff law firm pursuant to an agreement under which the law firm would receive a percentage of fees earned by the defendant from the clients he obtained while employed by the plaintiff. After the defendant left the plaintiff's employ, the plaintiff brought an action for fees against the defendant. The trial court ordered the defendant to produce discovery regarding three closed case files to the plaintiff. The defendant petitioned for a writ of certiorari to review the trial court's discovery order, arguing that the files were irrelevant to the plaintiff's claims. The Supreme Court denied the writ of certiorari and affirmed the trial court's order, ruling that defendant's argument was without merit. Id. at 60. The Court stated:
 "Without question, the files in issue contain highly relevant material that could help determine the validity or invalidity of [plaintiff's] claims. The files could reveal the work performed by [defendant] while employed by [plaintiff], the expenses paid by [plaintiff's] office, and the nature of the relationship between the clients and [defendant], as well as other relevant information. The requirement of relevancy has been met."
Id.; see also Borland v. Dunn, 113 R.I. 337, 321 A.2d 96 (1974) (holding that when the requested discovery was within the scope of Rule 26(b) and when there was no claim of privilege, the denial of the moving party's request for production by the Superior Court justice was clearly arbitrary and constituted an abuse of discretion).
On other occasions, the Supreme Court has reversed trial court rulings relating to requests for the production of documents. See, e.g.,DeCarvalho v. Gonsalves, 106 R.I. 620, 262 A.2d 630 (1970). InDeCarvalho, the defendants argued that the trial court erred in ordering them to produce documents pursuant to Rule 34 in a stockholder's action against them arising out of an alleged conspiracy to divert profits, business opportunities, and goodwill from a corporation. The order compelled the defendants to provide tax returns, books, and documents of the defendant "and any other predecessor business." Id., 106 R.I. at 625, 262 A.2d at 633 (emphasis added). The defendants asserted that the order was improper because not all of the requested documents, encompassing up to 20 years of business records from several different business entities, were relevant to the shareholder's action and because it unduly burdened them. The Supreme Court held that because the defendants had been charged with breaches of fiduciary duty during a five-year period, only documents from that period were relevant to the action. The Court also found that the defendants' personal tax returns should be presented to the trial court for redaction of irrelevant material before they were released, and that a new order, if entered, should limit their use to the purposes of the shareholder's action. Finally, the Court ruled that requiring the defendants to deliver the documents imposed an undue burden and, at most, the defendants should be required to make them available for inspection.
The DeCarvalho Court set forth some guidelines for other courts to consider when reviewing discovery requests. The court stated "[a]lthough we believe that the new Rules of Civil Procedure of the Superior Court with their pretrial discovery techniques have furnished a litigant with a fishing license, . . . the litigant may not cast his line until he [sic] has shown the requisite materiality of his request to produce." Id., 106 R.I. at 627, 262 A.2d 634 (citing 1 Kent, Rhode Island Civil Practice,
§ 34.3, at 281). Therefore, it is clear from this language that the burden under Rule 34 rests on the party seeking the production. See alsoBorland v. Dunn, 113 R.I. 337, 341, 321 A.2d 96, 99 (1974). Next, the court assessed the relevance and requisite materiality of the items requested. Towards this end, the court first divined the subject matter of the pending suit by examining the plaintiff's complaint, the motion to produce, its accompanying affidavit, and the depositions of each of the individual litigants. Then, the court evaluated the sufficiency of the description provided in the request for production, paying particular attention to the time frame in question. Finally, the court looked to the burdens imposed on the subject party by the moving party's request. The court, which seemed specifically concerned with the production of tax records and business records that contained the names of customers, stated:
 "The defendants' apprehension over the disclosure of the identification of their customers is justifiable. While the order prohibits the disclosure of any of the information obtained from defendants' records, this prohibition does not go far enough. Any new order which is to be entered should specifically provide that any information gained from the records made available to plaintiff, his attorneys, or accountants is to be used solely for the purposes of this litigation and for no other purpose."
Id., 106 R.I. at 630, 262 A.2d at 636 (citing Turmenne v. White Consol.Industries, Inc., 266 F. Supp. 35); see also Cardi v. Medical Homes,Inc., 741 A.2d 278 (R.I. 1999) (holding that trial justice abused her discretion by granting a discovery request that gave the defendants permission to take the depositions of 67 out-of-state banking institutions; the court noted that the discovery order was overly broad in light of the subject matter of the litigation, the relevant time periods, and the number of institutions sought to be deposed without any evidence that any party actually maintained an account at a particular institution).
 Application 
Under the DeCarvalho analysis, the Plaintiff here has come forward with a sufficient showing to establish his entitlement to the production of Defendant's business records pursuant to Rule 34, as requested. After examining the complaint, motions, answers to interrogatories, depositions, and the hearing testimony presented to this Court, in the instant matter, product identification and exposure will constitute the central issue at trial. Thus, the potential materiality of the items requested is clear. These documents potentially contain direct evidence of Plaintiff's exposure to asbestos-laden products supplied by the Defendant. Alternatively, the documents could be used to impeach Feinzig's credibility. See In re Nicole B., 703 A.2d 612, 616 (R.I. 1997) (citing Wigmore, Evidence § 1367 (Chadburn rev. 1974) for the proposition that cross examination is the "great engine of truth"). Further, it is important to note that Defendant ERCO has not asserted that the documents in question are protected by a privilege. Therefore, Plaintiff Sherman has established that these records are reasonably calculated to lead to the discovery of relevant evidence and are not subject to any specified exception to Rule 34, as limited by Rule 26(b).
Pursuant to DeCarvalho, this Court must evaluate the sufficiency of the description provided in the request for production, paying particular attention to the time frame in question. Factually, the production request in the present case is more comparable to the Callahan case than the DeCarvalho case. As in Callahan, the discovery request presented here is limited in scope and time. The Plaintiff seeks to view the records relating to CG during the time while Plaintiff was working at the facility. Such a request covers six or seven years of records relating to one job site only. The Plaintiff has not asked for all business records produced over a 20-year period as in DeCarvalho. Thus, a relative assessment of the cases suggests that the request for production here, as in Callahan, is sufficiently descriptive to warrant compelling the production.
Finally, as mandated by DeCarvalho, this Court must look to the burdens imposed on the subject party by the moving party's request. There, the Court seemed specifically concerned with the production of tax records and business records that contained the names of customers. Here, the Plaintiff has not asked for records produced over a 20-year period, tax returns, or customer lists as in DeCarvalho. Likewise, the Plaintiff did not ask to take 67 out-of-state depositions, as in Cardi. However, as argued by the Defendant, this Court is mindful of the DeCarvalho Court's admonition that "[a]ny new order which is to be entered should specifically provide that any information gained from the records made available to plaintiff, his attorneys, or accountants is to be used solely for the purposes of this litigation and for no other purpose." SeeDeCarvarlho, supra. In asbestos litigation, with a handful of plaintiffs' attorneys handling multiple cases against the same defendants, the present Defendant's fears of the future effect of this Court's ruling may be well-founded. Indeed, there may be no method by which information disclosed in this case can be limited to application in this case. Nonetheless, it seems that the information contained in ERCO's business records would be subject to production in any litigation involving plaintiffs similarly situated to Mr. Sherman. ERCO then has the opportunity, if it wishes, to return to this Court to make another argument if it feels that a particular plaintiff cannot sustain his or her entitlement to such production. See generally, Catone v. Medberry,555 A.2d 328 (R.I. 1989) (rejecting an argument based on the potential of future litigation). Ultimately, there is nothing before this Court to suggest that the production of documents would be prohibitively burdensome in the present case.
 Conclusion 
After reviewing the complaint, motions, answers to interrogatories, depositions, and the hearing testimony, this Court finds that Plaintiff Sherman's request for the production of Defendant ERCO's business records relating to its transactions with CG satisfies all three elements of the test enunciated by the Rhode Island Supreme Court in DeCarvalho v.Gonsalves in that 1) the documents potentially contain highly relevant material; 2) the discovery request is limited in time and scope, describing the desired documents with sufficient detail; and 3) the production of documents would not be excessively burdensome to the Defendant in the present case. Therefore, this Court grants Plaintiff Sherman's motion to compel and denies Defendant ERCO's motion for a protective order.
Counsel shall prepare an appropriate order for entry. The order should specifically address the details of the production, including the place, time, and manner of inspection and/or delivery.
[1] In a somewhat unusual procedural step, this Court decided to take testimony relating to the motion. Therefore, after Charles F. Ferguson testified on the Plaintiff's behalf, in the interest of fairness, this Court granted the Defendant a one-week leave to prepare cross examination and rebuttal.