**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 3 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

CHRISTOPHER J. THOMAS,

Plaintiff - Appellant,

v.

PACIFICORP, an Oregon corporation,
doing business as Utah Power & Light
Company,

Defendant - Appellee.

No. 02-4018

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:00-CV-629-ST)**

---

**Submitted on the briefs:**[*]

Samuel M. Barker, Salt Lake City, Utah, for Plaintiff-Appellant.

David A. Westerby and David J. Hardy of Kirton & McConkie, Salt Lake City,
Utah, for Defendant-Appellee.

---

Before **BRISCOE, McKAY,** and **McCONNELL**, Circuit Judges.

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.   See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.  The case is therefore
ordered submitted without oral argument.

**McKAY**, Circuit Judge.

This defamation, tortious interference with economic relations, and negligent infliction of emotional distress action stems from statements made by a Utah Power & Light [UP&L] employee to two of Plaintiff's business associates.

Plaintiff-Appellant Mr. Thomas entered into a business relationship with Michael T. Holmes and Michael H. Holmes (father of Michael T. Holmes) with the intent to bid on jobs offered by Appellee UP&L. For this purpose, Plaintiff and Michael T. Holmes formed a limited liability company called Kinetic Construction, L.L.C. Michael H. Holmes introduced Mr. Thomas to his son, facilitated the relationship, and worked with Mr. Thomas to bid on UP&L projects.

In April 1999, Mr. Thomas visited Appellee's offices to discuss information on new bidding procedures. While at Appellee's offices, Mr. Thomas met with Ms. Lambrou, a UP&L employee. Later that evening, Mr. Thomas phoned Ms. Lambrou at her home. The parties contest the content of both the meeting and the phone call. Ms. Lambrou reported the conversations she had with Mr. Thomas to her supervisors. Based on Ms. Lambrou's report, which included allegations of Mr. Thomas's and Ms. Lambrou's discussions of confidential information pertaining to other bidders for UP&L projects and

conversations of a sexually explicit nature, UP&L determined that Mr. Thomas would not be allowed to bid on its construction work.

Several days later, Appellee's agent contacted Michael H. Holmes to advise him that Mr. Thomas would not be allowed to bid on UP&L construction work and that Kinetic could bid only if Mr. Thomas was not involved with the project. Appellee's agent told Michael H. Holmes that UP&L was "fearful" of doing business with Mr. Thomas. Amend. Aplt. App. at 3. Appellee's agent also contacted Michael T. Holmes and relayed similar information. However, according to Appellant's version of the facts, instead of telling Michael T. Holmes that UP&L was "fearful" of doing business with Mr. Thomas, the agent told Mr. Holmes that Mr. Thomas had "bribed and threatened a Utah Power & Light company employee." Id. at 9. According to Appellee's version of the facts, there was no reference to a threat. Instead, Appellee's agent told Mr. Holmes that Mr. Thomas "had tried to get information from one of the secretaries there that would allow him to know the bids of other people . . . ." Aple. Supp. App. at S011, S069-71. Neither Michael T. nor Michael H. Holmes shared the above statements with anyone not affiliated with Kinetic. Id. at S061, S070. Kinetic has done no business; it decided not to go forward because Mr. Thomas was not allowed to bid on UP&L's construction projects. Id. at S061, S071.

Mr. Thomas filed the current lawsuit claiming that the statements made by

UP&L's agents were defamatory and caused him damage. Mr. Thomas later amended his complaint to assert additional claims for tortious interference with economic relations and negligent infliction of emotional distress arising out of the same statements. The district court, which retained jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332, granted summary judgment in favor of Defendant UP&L. The district court held that (1) the statements in question were privileged and there was no abuse of that privilege, (2) UP&L did not act for an improper purpose or by improper means, and (3) UP&L could not have foreseen that its actions would cause severe emotional distress.

Appellant Mr. Thomas claims that the district court erred in entertaining Appellee's summary judgment motion before requiring Appellee to answer requested discovery. Appellant also claims that the district court erred in finding Appellant's complaint insufficient to include "others." Appellant further claims that the district court erred in granting summary judgment to Appellee by holding that UP&L's statements were privileged when those statements were not true and there was no economic interest for UP&L and in failing to address Appellant's assertion of slander per se.[1]

We first address Mr. Thomas's assertion that the district court erred by

---

[1]While Appellant mentions his tortious interference with business relations and negligent infliction of emotional distress claims in his briefs, he does not raise any issue on appeal specifically regarding these claims.

-4-

entertaining and granting summary judgment because discovery was not complete. We review alleged errors in the discovery process for an abuse of discretion. Pippinger v. Rubin, 129 F.3d 519, 533 (10th Cir. 1997). We review a district court's grant of summary judgment *de novo*. Murphree v. US Bank of Utah, N.A., 293 F.3d 1220, 1221 (10th Cir. 2002) (quoting Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999)). Our review of the briefs and the record reveals that Mr. Thomas served several discovery requests on August 2, 2001, after the completion of discovery deadline of July 31, 2001. However, even if the requests had been served on July 31, the requests still were not timely. The Federal Rules of Civil Procedure allow parties thirty days to respond to interrogatories and requests for production. Fed. R. Civ. P. 33(b)(3), 34(b). Therefore, requests must be served at least thirty days prior to a completion of discovery deadline. See, e.g., Smith v. Principal Cas. Ins. Co., 131 F.R.D. 104, 105 (S.D. Miss. 1990). Therefore, we hold that the district court did not abuse its discretion in determining that discovery was completed before granting summary judgment.

Additionally, Mr. Thomas failed to avail himself of the shelter provided by Federal Rule of Civil Procedure 56(f). Rule 56(f) allows a party to show the court that he "cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Id. In Pasternak v. Lear Petroleum Exploration,

Inc., we held that "[w]here a party opposing summary judgment and seeking a continuance pending completion of discovery fails to take advantage of the shelter provided by Rule 56(f) by filing an affidavit, there is no abuse of discretion in granting summary judgment if it is otherwise appropriate." 790 F.2d 828, 832-33 (10th Cir. 1986).

Mr. Thomas also claims that the district court erred in failing to admit the affidavits of Carolee and Ron Crockett and in finding Appellant's complaint insufficient to include "others." Our review of the briefs and the record reveals that these affidavits do not support Mr. Thomas's allegations that the statements at issue were published to "others." Therefore, these affidavits were properly stricken and the district court did not err in finding Appellant's complaint insufficient to include "others."

We next address whether the district court erred in granting summary judgment in favor of Appellee on the issue of qualified privilege. We review a district court's grant of summary judgment *de novo*. Murphree, 293 F.3d at 1221. A motion for summary judgment is granted when the record demonstrates that "there is no genuine issue of material fact . . . and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56.

Mr. Thomas claims that the district court erred in holding that UP&L's statements were privileged because those statements were not true and there was

no economic interest for UP&L. "The law has long recognized that [statements are] conditionally privileged if made to . . . advance a legitimate common interest between the publisher and the recipient . . . ." Brehany v. Nordstrom, Inc., 812 P.2d 49, 58 (Utah 1991) (statements made by employer during a meeting of store managers that employees' dismissals were drug-related were qualifiedly privileged). "[I]t has long been held that communications between persons who share a common business interest are qualifiedly privileged and not libelous in the absence of malice." Lind v. Lynch, 665 P.2d 1276, 1278 (Utah 1983) (statements made in a proxy solicitation by a shareholder about the corporation's president and attorney were qualifiedly privileged); see also McClure v. American Family Mut. Ins. Co., 29 F. Supp. 2d 1046, 1057-60 (D. Minn. 1998) (statements by an insurer to its independent agents regarding two agents that had been terminated were subject to a qualified privilege); Market America, Inc. v. Christman-Orth, 520 S.E.2d 570, 576 (N.C. Ct. App. 1999) (qualified privilege protected allegedly defamatory bulletin sent by company's president to distributors). This conditional privilege allows a defendant to publish allegedly defamatory statements unless the plaintiff shows that the defendant abused the conditional privilege by acting with malice or by publishing the statements to others who do not have a justified reason to receive the statements. See Brehany, 812 P.2d at 58.

Mr. Thomas argues that UP&L did not have an economic interest in

protecting its relationship with the Holmeses because they had not yet entered into a business relationship. Instead, the Holmeses and Mr. Thomas (as Kinetic) had only inquired about the bidding process. Additionally, Mr. Thomas maintains that UP&L had no economic interest in protecting its relationship with Michael H. Holmes because he was not a partner in Kinetic.

Even though UP&L and the Holmeses were not yet in business with each other, the framework for a possible future relationship had been explored. Mr. Thomas, as a representative of Kinetic, had contacted and met with representatives of UP&L to inquire about UP&L's bidding procedures with the intent to bid on future UP&L projects. Michael T. Holmes was Mr. Thomas's business partner. Michael H. Holmes was also involved in the enterprise and twice accompanied Mr. Thomas to UP&L's offices. Aple. Supp. App. at S025-26, 056-59, 066-67. UP&L had a valid reason to believe that both Messrs. Holmes were involved with Mr. Thomas and Kinetic. UP&L also had a legitimate reason to avoid harming its early relationship with the Holmeses. It is possible that UP&L would have occasion to contract with the Holmeses in the future whether as Kinetic (without Mr. Thomas) or as another entity. We agree with the district court that

> [i]n the current case, both defendant and the Holmes have legitimate interests to protect. Plaintiff and his two partners, Michael H. and Michael T. Holmes, had formed a business, Kinetic, with the sole purpose of bidding on projects with the defendant. Defendant had made a decision not

to contract with plaintiff or any business entity related to the plaintiff. As such, Michael H. and Michael T. Holmes had an interest in being told why their new business would not be able to contract with defendant. Likewise, defendant had a legitimate interest in informing the Holmes of the decision in order to avoid destroying any potential further relationship with the partners. This legitimate common interest between publisher and recipient is sufficient to invoke the conditional privilege.

Amend. Aplt. App. at 61. Therefore, we hold that the statements at issue were conditionally privileged.

Since Appellee's statements were conditionally privileged, it is Appellant's burden to demonstrate abuse of that privilege. Brehany, 812 P.2d at 58. A "plaintiff can show abuse of the privilege by proving that the defendant acted with malice or that the publication of the defamatory material extended beyond those who had a legally justified reason for receiving it." Id. "[T]he defendant is protected unless plaintiff pleads and proves facts which indicate actual malice in that the utterances were made from spite, ill will or hatred toward him [, otherwise] there is no issue to be submitted to the jury." Combes v. Montgomery Ward & Co., 228 P. 2d 272, 277 (Utah 1951).[2] Appellant did not put forth any evidence that Appellee acted with malice in relaying the statements to the Messrs. Holmes. Additionally, there is no admissible evidence that the

[2]"[T]here is a distinction between the malice which is implied from every defamatory publication and the actual malice which is necessary to remove a conditional privilege." Combes, 228 P. 2d at 277; see also Brehany, 812 P.2d at 58 n.3.

-9-

statements were published to anyone besides the Messrs. Holmes. Therefore, we agree with the district court that there was no abuse of the qualified privilege.[3] We note that even though Mr. Thomas has asserted several disputes of fact, such as the actual content of the conversations he had with Ms. Lambrou, "there is no genuine issue of material fact" sufficient to overcome summary judgment as required by Federal Rule of Civil Procedure 56.

Finally, Mr. Thomas claims that the district court erred in failing to address Appellant's assertion of slander per se. Because Appellee's statements are subject to a qualified privilege and because Appellant did not put forth any evidence that Appellee acted with malice in relaying the statements to the Messrs. Holmes, we need not address this claim.

For the foregoing reasons, the decision of the district court is

**AFFIRMED.**[4]

---

[3]We note that because we hold that UP&L's statements to the Messrs. Holmes are conditionally privileged and because Appellant has not produced any admissible evidence suggesting an abuse of that privilege, the difference between Appellant's and Appellee's version of UP&L's statements to Michael T. Holmes is immaterial.

[4]Motion to Allow Supplemental Appendix for Plaintiff/Appellant is granted.