DECISION
Before the Court in this products liability action is Plaintiffs' Motion to Compel Defendants to Respond Fully to Plaintiffs' Interrogatories #1-2 and Request for Production #1. The Defendants Davol, Inc. ("Davol") and C.R. Bard, Inc. ("Bard") (Collectively "Defendants") object to this motion. This Court afforded the parties an opportunity to be heard on February 3, 2011. Jurisdiction is pursuant to G.L. 1956 § 8-2-14.
 I Facts and Travel
The instant matter involves litigation concerning allegations of defects in various models of the Composix Kugel Patches ("CK Patches") manufactured and sold by the Defendants Bard and/or Davol, its wholly owned subsidiary. In their motion, Plaintiffs Steven M. Ingram ("Mr. Ingram") and Kelley Dawn Ingram (collectively "Plaintiffs") request this Court to compel Defendants to fully respond to Plaintiffs' Interrogatories #1-2[1] and Request for Production #1.[2] Plaintiffs allege that these files have not been *Page 2 
produced because Defendants objected based on untimeliness and Super. R. Civ. P. 33 and 34. They argue that this Court should order full responses because the requests were made with sufficient time for Defendants to respond prior to the close of discovery, and the information sought is relevant to this matter.
In response, Defendants maintain that these requests are irrelevant to this case because the Ventrio Hernia Patch ("Ventrio"), which is the subject of this discovery, has never been implanted in Mr. Ingram and does not act as an alternative design for the CK Patch. Defendants further contend that this request is unduly burdensome and duplicative because trial is less than a month away and Defendants have already provided the majority of the Ventrio documents. Additionally, Defendants contend that these discovery requests are untimely because they impermissibly seek discovery requests past the close of discovery.
 II Analysis A Timeliness of the Request
Defendants argue that Plaintiffs' discovery requests are untimely because they contravene the discovery cut-off deadline set forth by this Court's December 2, 2010 *Page 3 
scheduling order. They further assert that Plaintiffs have not provided a compelling reason as to why these requests could not have been made at an earlier date. Plaintiffs contend that these requests are timely because they were served before the expiration of the discovery deadline. Therefore, they aver, Defendants are not excused from responding merely because their responses could be delayed beyond the January 10, 2011 deadline.
On December 2, 2010, this Court set forth a scheduling order which set January 10, 2011 as the closing date for fact discovery. A week after this scheduling order, on December 9, 2010, Plaintiffs served Defendants with the disputed interrogatories and production request.
Pursuant to Super. R. Civ. P. 33(a) and 34(b), a party has forty days after service of the interrogatories to serve sworn answers and forty days after the service of a document request to provide a written response. Similarly, Fed.R.Civ.P. 33(a) and 34(b)(2)(A) provide thirty days after the service of interrogatories to serve sworn answers and thirty days after the service of a document request to provide a written response. When an analogous federal rule and our state's rule of civil procedure are similar, this Court will look to federal courts for guidance in applying the rules in question. Butera v. Boucher,798 A.2d 340, 345 (R.I. 2002) (citing Heal v. Heal,762 A.2d 463, 466-67 (R.I. 2000)). Federal courts require that discovery requests are served at least thirty days prior to the close of discovery as the Rule allows for thirty days to serve answers. SeeThomas v. Pacificorp, 324 F.3d 1176, 1178 (10th Cir. 2003) (citingSmith v. Principal Cas. Ins. Co.,131 F.R.D. 104, 105 (S.D. Miss. 1990)); see also
8 Fed. Proc. Forms § 23:316 ("[W]hen a court sets a discovery deadline, any requests for discovery must be made in *Page 4 
sufficient time to allow the opposing party the response time required by [the Federal Rules] before the termination of discovery."). If discovery is not served within that time period, it is considered untimely. Thomas, 324 F.3d at 1178.
In the present case, Plaintiffs served this discovery request thirty-two days from the discovery deadline. This time did not allow for sworn answers and a written response within the discovery deadline because the Rhode Island rules allow for forty days to respond. Therefore, it would follow that the interrogatories and production requests in this case were untimely. See id.
Nevertheless, this Court is mindful that the scheduling order was established less than forty days from the set date of the close of discovery. Additionally, despite these requests extending the time for production beyond the discovery date, their original production date was not so close to the "eve-of-trial" that that this Court will bar Plaintiffs' requests solely based on timing. Contra Butera,798 A.2d at 344-45 (finding subpoenas propounded two days prior to trial to be "on the eve of trial" and therefore untimely). As a result of the timing of this Court's order and of Plaintiffs' requests, barring Defendants only because their request was untimely would not secure a just determination of this litigation.
 B Relevance of Plaintiffs' Request
Through the discovery process, Rhode Island litigants have the ability to obtain information "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Super. R. Civ. P. 26(b)(1). Within this process, R.I. Super. R. Civ. P. 34 requires that a party produce discoverable documents in its "possession, custody or control." Super. R. Civ. P. 34(a). In granting or denying *Page 5 
discovery orders, a justice of the Superior Court has broad discretion.See Corvese v. Medco Containment Servs.,687 A.2d 880, 881 (R.I. 1997). In DeCarvalho v. Gonsalves, the Rhode Island Supreme Court set forth guidelines for courts to consider when reviewing discovery requests. See106 R.I. 620, 626-28, 262 A.2d 630, 634-35 (1970). Specifically, our Supreme Court stated that "[a]lthough we believe that the new Rules of Civil Procedure of the Superior Court with their pretrial discovery techniques have furnished a litigant with a fishing license . . . the litigant may not cast his line until he [sic] has shown the requisite materiality of his request to produce."Id. at 627, 262 A.2d at 634 (citing 1 Kent, Rhode Island CivilPractice, § 34.3, at 281 (1969)). Thus, the burden of demonstrating requisite materiality under Rule 34 rests on the party seeking production. Id.
Plaintiffs argue that discovery concerning the Ventrio product line is relevant to this litigation because in many ways, according to Plaintiffs, the Ventrio patch was Defendants' replacement for the CK Patch. Therefore, Plaintiffs argue, their requests asking "when" and "why" about the Ventrio product line is relevant in this case. Conversely, Defendants argue that these discovery requests are irrelevant to this case because, they claim, evidence of a different product is irrelevant in establishing whether the product at issue could cause the alleged injuries. Additionally, Defendants maintain that Ventrio is irrelevant because it is neither the replacement for the CK Patch nor a patch implanted in Mr. Ingram.
In this Court's analysis, this concept of relevancy is to be given a liberal application. DeCarvalho, 106 R.I. at 627, 262 A.2d at 634;see also 8 Wright Miller, Federal Practice andProcedure, Civil 3d § 2008 at 142 (stating that "relevancy should be *Page 6 
construed liberally and with common sense, rather than in terms of narrow legalisms"). Thus, "the test to be applied is whether the material sought is relevant to the subject matter of the suit, not whether it is relevant to the pleadings." DeCarvalho,106 R.I. at 627, 262 A.2d at 634. Moreover, this relevancy is not synonymous with "admissible" at trial. Id.; 8 Wright Miller § 2008 at 144-45; see also
Fed.R.Civ.P. 26(b)(1) ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."); Super. R. Civ. P. 26(b)(1) ("It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.")
Defendants argue that this patch is irrelevant because it is a different product. Nevertheless, the cases relied upon by Defendants involve the relevancy of evidence at the trial stage, not during the discovery process. See Freund v. Fleetwood Enters., Inc.,956 F.2d 354, 360 (1st Cir. 1992) (finding that evidence of gas leaks in certain RV models not subject to the litigation was irrelevant to likelihood of gas leaks in the RV in question and therefore keeping these statements from the jury was within the trial justice's discretion); McBurney Law Servs., Inc. v. Apex, Inc.771 A.2d 911, 911-12 (R.I. 2001) (finding that the trial justice did not abuse his discretion in denying the proposed line of questioning during cross-examination regarding testing conducted on toaster models that were not subject to the litigation because the testing reports on those models were irrelevant). Thus, those cases are not illustrative of the relevancy of another product during the discovery phase of this litigation. In light of the liberal interpretation of relevancy within the discovery, the extra-large Ventrio patch may lead to admissible *Page 7 
evidence because Mr. Ingram had an extra-large CK Patch, and therefore, production regarding the extra-large Ventrio patch may shed light on different types of designs for these patches or information regarding the alleged problems with the CK Patch in question. SeeDeCarvalho, 106 R.I. at 627, 262 A.2d at 634; Super. R. Civ. P. 26(b)(1). Accordingly, discovery regarding this extra large Ventrio patch is relevant within the discovery phase as it may lead to admissible evidence.
 C Unduly Burdensome
Defendants argue that these requests are unduly burdensome because they are vast and overly broad. Specifically, Defendants contend that this request is not merely "when" and "why," as Plaintiffs contend, but rather seeking information and production of all documents pertaining to the launch of Ventrio and the extra-large Ventrio. Therefore, Defendants contend that the vastness of this discovery warrants the denial of this motion.
Superior Court Rule of Civil Procedure 26(b)(1)(iii) limits discovery if it is "unduly burdensome or expensive." Thus, this Court will not allow a party to engage in a fishing expedition merely as a result of a liberal standard of relevancy. See DeCarvalho,106 R.I. at 627, 262 A.2d at 634. In such instances, these requests are unduly burdensome as a result of their vastness. Under this liberal discovery standard, documents relating to the extra-large Ventrio are relevant during discovery production to Plaintiffs' case. Nevertheless, this Court cannot grant a motion to compel based on such a broad request, when Plaintiffs already have information on the product in question. *Page 8 
 D Duty to Supplement
Superior Court Rule of Civil Procedure 26(e)(2)(B) requires a party to supplement the response when "the party knows that the response though correct when made is no longer true or complete and the circumstances are such that a failure to amend the response is in substance a knowing concealment." Additionally, under Super. R. Civ. P. 26(e)(3), a court may impose the duty to supplement responses. Although this duty is limited, it serves the purpose of the discovery rules "to avoid surprises and ambush" at trial. 1 Robert B. Kent et al., Rhode IslandCivil and Appellate Procedure § 26:10 (West 2006).
Defendants argue that they have already produced documents to Plaintiffs regarding Ventrio and the extra-large Ventrio, including but not limited to the Ventrio 510k application for all sizes and models the project files for the patch (approximately 25,000 pages), and emails from eight employees who worked on Ventrio project teams in 2008 and 2009. Additionally, Plaintiffs' counsel deposed over thirty of Defendants' current and former employees, including the Ventrio project manager. Thus, this Court concludes that requiring Defendants to produce this information for a second time is unreasonably duplicative.See Super. R. Civ. P. 26(b)(1)(i). Nevertheless, Defendants must supplement their previous Ventrio and extra-large Ventrio production with any relevant discovery to "complete the circumstances."See Super. R. Civ. P. 26(e)(2)(B). *Page 9 
 III Conclusion
For the foregoing reasons, this Court orders Defendants to supplement their previous Ventrio and extra-large Ventrio production. Plaintiffs may also serve Defendants with a more narrowly tailored request for production regarding the extra-large Ventrio. Accordingly, this motion to compel is denied without prejudice, to renew if Defendants fail to comply with their obligations to supplement. Counsel shall submit appropriate order for entry.
[1] Interrogatory # 1 states the following: "Identify the Official Launch date and documents pertaining to the first date of commercial availability of the Ventrio hernia repair product line; including but not limited to communications to Davol's sales force, internal communications, external communications, and correspondence with the FDA or other regulatory bodys." Interrogatory #2 requests Defendants to "[i]dentify the Official Launch date and documents pertaining to the first date of commercial availability of the Extra-Large Ventrio hernia repair product line; including but not limited to communications to Davol's sales force, internal communications, external communications, and correspondence with the FDA or other regulatory bodies."
[2] Request for Production # 1 seeks production of "any and all documents pertaining to the Extra Large Ventrio hernia product, including but not limited to design, development, quality assurance, clinical analysis, testing and commercialization." *Page 1