CROWE COUNTRYSIDE REALTY
ASSOCIATES, CO., LLC

v.

NOVARE ENGINEERS, INC.

No. 2004–204–M.P.

Supreme Court of Rhode Island.

Feb. 1, 2006.

Matthew H. Leys, Esq., Newport, for Plaintiff.

James S. D'Ambra, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

We issued a writ of certiorari in this case to address an important issue under Rule 26(b) of the Superior Court Rules of Civil Procedure concerning the extent to which a party may obtain discovery of written communications between an opposing party's attorney and its testifying expert witness. In a matter of first impression in Rhode Island, we are called upon to review the interaction of two fundamental principles underlying our adversarial system: the liberal theory of discovery embodied in the Rules of Civil Procedure, and the work-product doctrine.

In this case, a motion justice of the Superior Court ruled that all of an attorney's correspondence to an expert witness was subject to discovery. For the reasons set forth herein, we quash the order of the Superior Court and remand for an *in camera* review of the requested documents.

## I

### Facts and Procedural History

This matter arises from an engineering malpractice case involving allegedly negligent advice about a fire alarm system in which plaintiff, Crowe Countryside Realty Associates, Co., LLC (Crowe), has retained three experts: an expert in the field of engineering, an expert in the field of fire safety, and an expert in the field of real estate evaluation and appraisal. Responding to interrogatories served by defendant, Novare Engineers, Inc. (Novare), plaintiff identified each of these individuals as an expert who was expected to testify at trial. On June 18, 2004, defendant issued subpoenas duces tecum to all three experts, commanding their attendance at a deposition on June 24, 2004, and further commanding them to bring "[a]ny and all records relating in any way to [their] review, evaluation and formation of opinions in connection with the * * * litigation." On June 22, 2004, plaintiff filed motions for protective orders, asserting that the subpoenas sought materials protected from discovery by the work-product privilege.

A justice of the Superior Court heard the motions on June 23, 2004. At the hearing, Crowe argued that communications between its counsel and testifying experts constituted "trial preparation material." The plaintiff contended that to

obtain discovery of such items under Rule 26(b)(3), Novare was required to show that it had a substantial need of the materials and that it could not obtain the substantial equivalent of the materials by other means without undue hardship. *See* Rule 26(b)(3). The motion justice rejected this argument, ruling that once an expert witness is designated as a testifying expert, "any and all documents which were exchanged, which in any way relate to the opinion that he's given in the case or is prepared to give in the case" are discoverable.

Crowe next argued that at least one of the documents subject to the subpoenas contained the mental impressions, conclusions, opinions, and/or legal theories of its attorney, causing the material to be immune from discovery. The motion justice rejected this argument also, stating, "[y]ou have to be careful what you share with testifying experts, because whatever you share with them is subject to scrutiny." As a result, the motion justice denied plaintiff's motions.

On July 8, 2004, plaintiff filed a petition for writ of certiorari, which we granted on April 15, 2005. In the interim, the motion justice granted plaintiff's motion to stay the trial and enforcement of the subpoenas, pending our determination of said petition. On certiorari, Crowe argues that the motion justice should have taken measures to protect its attorney's work product by, for example, either refusing to order the production of the documents or ordering that the mental impressions, conclusions, opinions, and legal theories of Crowe's attorney be redacted from any documents otherwise discoverable. Contrarily, Novare argues that any correspondence from an attorney that is considered or relied on by a testifying expert is discoverable under Rule 26(b)(4).

## II

### Standard of Review

■ Generally, this Court's review on writ of certiorari is limited "to examining the record to determine if an error of law has been committed." *State v. Santiago*, 799 A.2d 285, 287 (R.I.2002) (quoting *State v. Gautier*, 774 A.2d 882, 886 (R.I.2001)). We do not weigh the evidence on certiorari, but only conduct our review to examine questions of law raised in the petition. *Boucher v. McGovern*, 639 A.2d 1369, 1373 (R.I.1994). "Questions of law, however, including questions of statutory interpretation, are reviewed *de novo* by this Court." *Carnevale v. Dupee*, 783 A.2d 404, 408 (R.I.2001). Because our task in this case is to interpret and calibrate the tension between subdivisions (b)(3) and (b)(4) of Rule 26 so that we may properly apply them to defendant's discovery requests, our review is *de novo*.

## III

### Discussion

■ The question herein presented is whether and to what extent under Rule 26, subdivisions (b)(3) and (b)(4), the work-product doctrine applies to documents and other materials reviewed by expert witnesses expected to testify at trial. Rule 26 of the Superior Court Rules of Civil Procedure is based on the 1970 version of the corresponding Federal Rule of Civil Procedure. Advisory Committee's Notes to Rule 26. "This [C]ourt has stated previously that where the federal rule and our state rule of procedure are substantially similar, we will look to the federal courts for guidance or interpretation of our own rule." *Smith v. Johns–Manville Corp.*, 489 A.2d 336, 339 (R.I.1985). Because subdivision (b) of Rule 26, which is at the crux of our inquiry today, is substantially similar to its 1970 federal counterpart, this

Court will look to federal court decisions interpreting that version of Fed.R.Civ.P. 26(b) for guidance.

Before December 1, 1993, when Congress amended Fed.R.Civ.P. 26, many federal courts had addressed the precise question we face today with respect to the federal rule, reaching inconsistent results. *Compare Boring v. Keller*, 97 F.R.D. 404, 404–05, 408 (D.Colo.1983) (mem.) (addressing the issue and holding that discovery of all work product reviewed by testifying experts was necessary for impeachment), and *Intermedics, Inc. v. Ventritex, Inc.*, 139 F.R.D. 384, 385, 397 (N.D.Cal.1991) (interpreting Fed.R.Civ.P. 26 to mean that "communications from counsel to a testifying expert are discoverable to the extent that they relate to matters about which the expert will testify"), *with Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 588–89, 595–96 (3d Cir.1984) (addressing the issue and holding that the federal rule required factual work product shared with a testifying expert to be fully discoverable, while the mental impressions, conclusions, opinions, and theories of an attorney were protected), and *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 293–94 (W.D.Mich.1995) (answering the question by holding that while discovery of facts known and opinions held by a testifying expert was permitted, the mental impressions, conclusions, opinions, and theories of the attorney were absolutely protected). Indeed, Congress amended the federal rules in 1993 partially to resolve this divergence of opinion. *See* Advisory Committee's Notes to Fed.R.Civ.P. 26 (1993 Amendments) ("[L]itigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions * * * are privileged

or otherwise protected from disclosure when such persons are testifying or being deposed."). In contrast, subdivisions (b)(3) and (b)(4) of Rhode Island's Rule 26 continue to display substantially the same wording as the 1970 Fed.R.Civ.P. 26, with a few variations irrelevant to our analysis today. *Compare* Rule 26 (language of (b)(3) and (b)(4)), *with* Fed.R.Civ.P. 26 (1970 version) (language of (b)(3) and (b)(4)).

## A. The Work–Product Privilege

The viability of the work-product privilege under the Federal Rules of Civil Procedure was recognized by the United States Supreme Court in its landmark decision, *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947).[1] In *Hickman*, the plaintiff requested that opposing counsel produce witness statements and recount oral interviews with witnesses during discovery. *Id.* at 498–99, 67 S.Ct. 385. The Supreme Court denied the request, holding that most written materials "obtained or prepared * * * with an eye toward litigation" are protected from discovery. *Id.* at 511, 67 S.Ct. 385. In so holding, the Supreme Court noted that "[p]roper preparation of a client's case demands that [the attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Id.* The Supreme Court stated that this policy against invading the privacy of an attorney's course of preparation was both well recognized and essential to an orderly working of the adversarial system. *Id.*

However, not all materials prepared by an attorney constitute protected

---

1. *Hickman* invoked a previous version of Fed. R.Civ.P. 26(b) that provided that "any matter, not privileged, which is relevant to the subject matter involved in the pending action," is

subject to discovery. *Hickman v. Taylor*, 329 U.S. 495, 503n, 67 S.Ct. 385, 91 L.Ed. 451.7 (1947).

work product. *Hickman*, 329 U.S. at 511, 67 S.Ct. 385. Unprotected materials might include documents that may be admissible as evidence or information that may be useful for corroboration or impeachment. *Id.* Precluding such information from discovery in certain circumstances would tend to strip the federal discovery rules of their liberal ideals. *Id.* at 511–12, 67 S.Ct. 385. Still, the Supreme Court indicated that it would be a "rare situation" that would justify disclosure of attorney work product, *id.* at 513, 67 S.Ct. 385, and that "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and mental impressions of an attorney." *Id.* at 510, 67 S.Ct. 385.[2]

This Court has applied the *Hickman* work-product doctrine. *See, e.g., Cabral v. Arruda*, 556 A.2d 47, 49 (R.I.1989). We also have noted that Rhode Island's Rule 26(b)(3) embodies this doctrine. *See Rhode Island Depositors Economic Protection Corp. v. Mapleroot Development Corp.*, 715 A.2d 1260, 1265 (R.I.1998). Rule 26 has two subparts whose interpretation and interrelation are crucial to the present controversy. The first subpart relevant to our inquiry is subdivision (b)(3) of Rule 26, which provides, in part:

> "(3) *Trial Preparation: Materials.* Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivisions (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative * * * only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the par-

ty's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."

Rule 26(b)(3) then goes on to codify the work-product doctrine: "In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.*

Rule 26(b)(3) recognizes that there are two types of work product that warrant different levels of protection during the discovery process. The second sentence of Rule 26(b)(3) requires courts to "protect against the disclosure of the [attorney's] mental impressions, conclusions, opinions, or legal theories." Federal courts have deemed this type of work product "opinion" or "core" work product. *See, e.g., Bogosian*, 738 F.2d at 593; *Haworth, Inc.*, 162 F.R.D. at 293.

The other type of work product, which encompasses the remainder, is "factual" or "ordinary" work product. *See, e.g., Data General Corp. v. Grumman Systems Support Corp.*, 139 F.R.D. 556, 560 (D.Mass. 1991). Many federal courts have afforded factual work product less protection than opinion work product, opining that the first sentence of Rule 26(b)(3) does allow some factual materials prepared in anticipation of litigation to be discovered, so long as the party seeking discovery demonstrates a substantial need for the materials and that it cannot obtain the substantial equivalent without undue hardship. *See, e.g., Bogosian*, 738 F.2d at 592; *see also* Fed.R.Civ.P. 26(b)(3) (1970 version).

---

**2.** The Supreme Court extended the work-product privilege to apply to materials prepared by agents of a party's attorney in *United*

*States v. Nobles*, 422 U.S. 225, 238–39, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).

## B. Federal Court Approaches to the Tension Between Subdivisions (b)(3) and (b)(4) of Rule 26

Although federal courts interpreting the 1970 version of Rule 26 appear to agree that there are two types of work product delineated in subdivision (b)(3) that deserve different levels of protection, a wide divergence of opinion has arisen with respect to when opinion work product shared between counsel and testifying experts is discoverable. The disparity has arisen because of the inevitable tension in Rule 26 between the language of subdivision (b)(3), quoted above, and subdivision (b)(4), pertaining to discovery from testifying experts. The question is whether the absolute protection afforded opinion work product in subdivision (b)(3) also applies to opinion work product once it is reviewed by a testifying expert by virtue of subdivision (b)(4).

Rule 26(b)(4) deals with discovery from testifying experts,[3] and states, in relevant part:

*"Trial Preparation: Experts."*

"(A) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion the court may order further discovery by other means * * *."

The first sentence of Rule 26(b)(3), before announcing the substantial need/undue hardship test for materials prepared in anticipation of litigation, states that it is "[s]ubject to the provisions of subdivision (b)(4)." This "subject to" language does not appear in the sentence of (b)(3) that announces absolute immunity for opinion work product. *Id.* Because of this conditional language in the rule, federal courts have adopted varying approaches to address the interrelationship between subdivisions (b)(3) and (b)(4) when interpreting the 1970 federal rule.

Federal courts have taken generally two approaches, with some variation. Federal courts interpreting Fed.R.Civ.P. 26(b)(3) in conjunction with Fed.R.Civ.P. 26(b)(4) have emphasized either discovery principles or protection principles when faced with an inquiry such as the one we face today. Some federal courts, when interpreting the 1970 version of Fed.R.Civ.P. 26, took a discovery-oriented approach that emphasized the liberal ideals of discovery and the need for adequate information for lawyers to conduct effective cross-examination of an opposing party's experts. These courts allowed broad discovery of information reviewed by testifying experts.

For example, in *Boring,* 97 F.R.D. at 407, the United States District Court for the District of Colorado interpreted Fed. R.Civ.P. 26 to allow discovery of all opinion work product that an expert utilizes to formulate his or her opinion. At the onset, the *Boring* court stated that Fed. R.Civ.P. 26(b)(3) did not grant an absolute privilege for all work product, and that a party can waive such protection. *Boring,* 97 F.R.D. at 407. The *Boring* court held that although no waiver occurs merely by transfer of information to an expert, the underlying facts and opinions supporting an expert's opinion are an exception to the work-product rule. *Id.* The *Boring* court reasoned that "immunized materials

---

**3.** Another subdivision of Rule 26 deals with discovery of facts known and opinions held by an expert who has been retained or specially employed by a party in anticipation of trial, but who will not testify at trial. *See* Rule 26(b)(4)(B).

should not remain undiscoverable after they have been used to influence and shape testimony." *Id.; see also Berkey Photo, Inc. v. Eastman Kodak Co.*, 74 F.R.D. 613, 617 (S.D.N.Y.1977) (stating that discovery should be allowed "where an attempt is made to exceed decent limits of preparation on the one hand and concealment on the other").

The *Boring* court further opined that to hold otherwise would frustrate the purpose of Fed.R.Civ.P. 26(b)(4) of helping parties prepare for cross-examination and impeachment. *Boring*, 97 F.R.D. at 407–08. The *Boring* court held that discovery of opinion work product reviewed by testifying experts was necessary to allow opposing counsel to demonstrate whether the expert was unfairly prejudiced by an attorney. *Id.* at 408; *see also Occulto v. Adamar of New Jersey, Inc.*, 125 F.R.D. 611, 615–16 (D.N.J.1989) (holding that expert reports created by the attorney but signed and reviewed by a testifying expert were subject to discovery under a similar analysis); *Fauteck v. Montgomery Ward & Co., Inc.*, 91 F.R.D. 393, 398 (N.D.Ill.1980) (holding that the process by which certain records were encoded into computer readable form was discoverable because subdivision (b)(4) was "carefully drawn to assure competent cross-examination of trial experts" and subdivision (b)(3) "expressly does not apply to material relating to expert testimony"). Thus, according to *Boring* and other federal courts following a similar discovery-oriented analysis, virtually all materials shared with experts would appear to be discoverable under the 1970 version of Fed.R.Civ.P. 26.

The Northern District of California devised a balancing test to reach a similar result,[4] holding that all written and oral communications from a lawyer to an expert that are related to matters about which the expert would testify are discoverable despite the fact that the materials otherwise would be considered opinion work product. *Intermedics, Inc.*, 139 F.R.D. at 387. The *Intermedics* court was asked to decide whether questions and documents regarding communications between the plaintiff's counsel and a testifying expert were discoverable. *Id.* at 385. In holding that such communications were discoverable, the *Intermedics* court relied on the 1970 Advisory Committee's Notes to Fed.R.Civ.P. 26, which indicated that the reason for adding subdivision (b)(4) to specially deal with experts was to "reject as ill-considered the decisions which have sought to bring expert information within the work product doctrine." *Intermedics, Inc.*, 139 F.R.D. at 388 (quoting Advisory Committee's Notes to Fed.R.Civ.P. 26 (1970)). *But see Haworth, Inc.*, 162 F.R.D. at 293, 294 (citing the same committee note and finding "nothing in any version of subdivisions (b)(3) and (b)(4), or the committee notes, that suggests core attorney work product was discoverable under subdivision (b)(4)").

Although these and other federal courts emphasized the need for discovery to allow for effective cross-examination of opposing expert witnesses, other federal courts took

---

**4.** The *Intermedics* court used an "open balancing analysis," in which it: (1) identified the interests that the work-product doctrine was intended to promote; (2) made a judgment about whether these interests would be harmed by a ruling that communications shared with testifying experts are discoverable or advanced by a ruling that these kinds of communications are not discoverable; (3) identified the relevant interests underlying Fed.R.Civ.P. 26 and Federal Rules of Evidence 702, 703, and 705; and (4) made a judgment about how much those interests would either be harmed by a ruling that these communications are not discoverable or advanced by a ruling that they are discoverable. *Intermedics, Inc. v. Ventritex, Inc.*, 139 F.R.D. 384, 391–92 (N.D.Cal.1991).

protection-oriented approaches. For example, some federal courts emphasized protection by holding that opinion work product shared with a testifying expert is discoverable only after a "far stronger showing of necessity and unavailability by other means" than that required for disclosure of factual work product under Fed. R.Civ.P. 26(b)(3). *Hamel v. General Motors Corp.*, 128 F.R.D. 281, 283 (D.Kan. 1989) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 402, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). These federal courts generally relied upon the language of Fed. R.Civ.P. 26(b)(3), but failed to address subdivision (b)(3)'s interrelationship with subdivision (b)(4). *See, e.g., Hamel*, 128 F.R.D. at 283 (recognizing subdivision (b)(4), but applying the substantial need test without discussion of subdivision (b)(3)'s "subject to" language).

The United States Court of Appeals for the Third Circuit announced an even more protection-oriented approach in *Bogosian*, 738 F.2d at 593–94. In *Bogosian*, the issue again was whether communications and documents exchanged between an attorney and testifying experts were discoverable under the 1970 version of Fed. R.Civ.P. 26. *See Bogosian*, 738 F.2d at 589–90. The Third Circuit held that Fed. R.Civ.P. 26(b)(3) required that opinion work product absolutely be protected from discovery, while most factual work product was discoverable only upon a showing of substantial need. *See Bogosian*, 738 F.2d at 594. However, subdivision (b)(4), to which subdivision (b)(3) was expressly subject, indicated that when a party seeks discovery of trial preparation material pertaining to expert testimony, factual work product contained therein would be discoverable without a showing of substantial need, if in the form of interrogatories. *See Bogosian*, 738 F.2d at 594 ("[Subdivision (b)(4) ] is expressly limited to interrogatories."). The *Bogosian* court further stated

that, as recognized by the 1970 Advisory Committee's Notes to Fed.R.Civ.P. 26, "courts will sometimes find it necessary to order disclosure of a document [containing both opinion and factual work product] but with portions deleted." *Bogosian*, 738 F.2d at 595 (quoting Advisory Committee's Notes to Fed.R.Civ.P. 26 (1970)). Thus, the Third Circuit's holding required redaction when necessary to protect legal theories of the lawyer, while allowing factual work product exchanged between the lawyer and expert full disclosure. *Id.*

Significantly, according to the *Bogosian* analysis, the language in the first sentence of subdivision (b)(3) making it "[s]ubject to the provisions of subdivision (b)(4)" applies only to the first sentence of subdivision (b)(3) pertaining to factual work product, and not to the second sentence pertaining to opinion work product. *Bogosian*, 738 F.2d at 595; *see* Fed.R.Civ.P. 26(b)(3) (1970 version). The Third Circuit found that even though subdivision (b)(4) allows discovery through interrogatories of certain information concerning expert witnesses expected to testify at trial, it does not require discovery of opinion work product. *See Bogosian*, 738 F.2d at 594. In addition, the *Bogosian* court stated that "the marginal value in the revelation on cross-examination that the expert's view may have originated with an attorney's opinion or theory does not warrant overriding the strong policy against disclosure of documents consisting of core attorney's work product." *Bogosian*, 738 F.2d at 595.

A similar analysis was employed in *Haworth*, wherein a federal district court concluded that "the protection accorded an attorney's mental impressions and opinions by the Supreme Court in *Hickman* * * * was intended to apply to discovery from experts." *Haworth, Inc.*, 162 F.R.D. at 294 (citation omitted). The *Haworth* court interpreted the rule as the court in *Bogo-*

*sian* had, concluding that "no special standard for disclosure applied to core work product in the possession of an expert." *Haworth, Inc.*, 162 F.R.D. at 295.

The United States District Court for the District of Rhode Island adopted the *Haworth* analysis in *The New Mexico Tech Research Foundation v. Ciba–Geigy Corp.*, 37 Fed.R.Serv.3d 971, 977–78 (D.R.I. 1997).[5] The District of Rhode Island agreed that the Advisory Committee's Notes to Fed.R.Civ.P. 26 indicated that factual information considered by a testifying expert, even when derived from counsel, must be disclosed. *Ciba–Geigy Corp.*, 37 Fed.R.Serv.3d at 978. The District of Rhode Island noted that this analysis complied with subdivision (b)(4), which permitted discovery of the bases for the expert's opinions or the source of the facts upon which the expert relies.[6] *Id.*

Like the *Bogosian* and *Haworth* courts, however, the District of Rhode Island determined that the language in Rule 26 accorded heightened protection to attorney opinion work product. *See Ciba–Geigy Corp.*, 37 Fed.R.Serv.3d at 977–78. The District Court further agreed that the "subject to" language in subdivision (b)(3), making it subject to the ability to depose experts granted in subdivision (b)(4), applied only to the first sentence of subdivision (b)(3), and therefore the mandate in the second sentence of subdivision (b)(3) that the court "shall protect" opinion work product applied to all discovery re quests, including experts' depositions. *See Ciba–Geigy Corp.*, 37 Fed.R.Serv.3d at 977–78. In so holding, the District of Rhode Island noted that "the risk of an attorney influencing an expert witness does not go unchecked in the adversarial system, for the reasonableness of an expert opinion can be judged against the knowledge of the expert's field and is always subject to the scrutiny of other experts." *Id.* at 978 (quoting *Haworth, Inc.*, 162 F.R.D. at 295–96).

## C. This Court's Interpretation of Rhode Island's Rule 26

This Court also finds the *Bogosian–Haworth* reasoning persuasive. We find compelling the rationale of those courts that effective cross-examination on the issue of the basis of an expert's opinion nonetheless may be conducted without revealing the mental impressions, conclusions, opinions, or legal theories of an attorney. The adversarial system continues to place a check upon the bias of testifying expert witnesses absent such disclosure, for their testimony is subject to impeachment by

---

5. Because of a dearth of appellate court opinions addressing the precise issue before us, we depart from our usual practice and cite several decisions and orders of federal district courts, including *The New Mexico Tech Research Foundation v. Ciba–Geigy Corp.*, 37 Fed.R.Serv.3d 971 (D.R.I.1997), an unreported "memorandum and order and report and recommendation" of the District of Rhode Island. We consider the reasoning of the magistrate judge to be instructive because he relied upon analyses devised by other federal courts interpreting the older version of Fed. R.Civ.P. 26 that is substantially similar to our Rule 26 in determining the same issue this Court is presented with today.

6. It should be noted that the District of Rhode Island applied the post–1993 amendment version of Fed.R.Civ.P. 26(b)(4)(A), which states: "A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If a report from the expert is required under subdivision (a)(2)(B), the deposition shall not be conducted until after the report is provided." *Ciba–Geigy Corp.*, 37 Fed.R.Serv.3d at 976n.3 (quoting Fed.R.Civ.P. 26(b)(4)(A) (1993 version)). The court also applied the post–1993 version of Fed.R.Civ.P. 26(b)(3), which is almost identical to the 1970 federal version of the subdivision, with minor revisions. *See* Fed.R.Civ.P. 26(b)(3) (1993 version); *Ciba–Geigy Corp.*, 37 Fed.R.Serv.3d at 975n. 2.

the contrary testimony of experts for the opposing party or other contrary authorities. Moreover, we agree with these federal courts that any value that may result from revealing how an attorney has influenced a testifying expert does not override the strong policy against disclosure of attorneys' innermost thought processes. The need to protect such opinion work product was made apparent in *Hickman,* 329 U.S. at 511, 67 S.Ct. 385, is codified in our rules, and has been reiterated by this Court on a number of occasions. *See, e.g., State v. Bertram,* 591 A.2d 14, 28 (R.I. 1991); *Cabral,* 556 A.2d at 49; *State v. von Bulow,* 475 A.2d 995, 1008–10 (R.I.1984); *Congregation Sons of Zion v. Providence Redevelopment Agency,* 109 R.I. 293, 299n.1, 284 A.2d 297, 300n.1 (1971). We do not intend to diminish this strong policy today.

The very essence of trial preparation and strategy is that an attorney must take facts, sift them, decide what is relevant and what is not, develop theories based on applicable law, and prepare his or her client's witnesses accordingly. *See Hickman,* 329 U.S. at 511, 67 S.Ct. 385. Without the ability to protect their own conclusions and theories from discovery, attorneys may not be able to fully and confidently prepare expert witnesses for their clients' trials. Permitting full disclosure of everything revealed to expert witnesses might hamper the trial preparation process because attorneys would be reluctant to reveal their mental impressions, legal theories, trial tactics, and strategies to testifying experts. In our opinion, it is the disclosure of just such information that Rule 26(b)(3)'s dictation of the work-product privilege was intended to prevent.

 Indeed, the Advisory Committee's Notes to Rule 26 recognize that the first paragraph of subdivision (b)(3) governs the "qualified immunity of trial preparation materials and the *absolute* immunity of 'the mental impressions, conclusions, opinions, or legal theories of an attorney.'" Advisory Committee's Notes to Rule 26 (quoting Rule 26(b)(3)). (Emphasis added.) This Court concurs with the *Bogosian–Haworth* line of cases and the District of Rhode Island that the "subject to" language in subdivision (b)(3), making it subject to subdivision (b)(4), applies only to the first sentence of subdivision (b)(3). We therefore hold that the clear language in the second sentence of subdivision (b)(3) requires that a court protect all core or opinion work product of an attorney, whether or not shared with an expert. We believe that this command to courts, that they "shall protect" opinion work product, was intended to apply to all discovery requests of materials prepared in anticipation of litigation because of the admonition's location in the general portion of Rule 26 applying to all discovery. *See* Rule 26(b)(3).

 On the other hand, most factual or ordinary work product prepared in anticipation of litigation is discoverable according to the first sentence of subdivision (b)(3), that is, only if the opposing party shows "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Rule 26(b)(3). Because the first sentence of subdivision (b)(3) is made "[s]ubject to the provisions of subdivision (b)(4)," however, factual work product exchanged between a testifying expert and an attorney does not have to meet the substantial need/undue hardship standard, and is instead fully discoverable in accordance with subdivision (b)(4). *See* Rule 26(b)(3)-(4). In addition, we adopt the *Bogosian* court's admonition that redaction sometimes will be necessary when a particular item con-

tains both types of work product to ensure that opinion work product is fully protected, while factual work product underlying an expert's opinion is fully disclosed. *See Bogosian*, 738 F.2d at 595.

This Court rejects the approaches of *Boring* and its progeny that anything shared with experts is discoverable. We disagree that such a broad disclosure policy was intended by the drafters of Rule 26, when the Supreme Court already had warned that "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman*, 329 U.S. at 510, 67 S.Ct. 385. Instead, the approach we adopt today will allow a trial justice to examine communications exchanged between attorneys and testifying experts as they are sought, and to make independent determinations about their classification as factual or opinion work product. A trial justice then will be better equipped to decide which information warrants protection as mental impressions, conclusions, opinions or legal theories. This approach strikes a balance between protecting an attorney's opinion work product, as contemplated by the Supreme Court in *Hickman* and required by the drafters of Rule 26 in the second sentence of subdivision (b)(3), and permitting full disclosure of the factual bases underlying an expert's opinion, as contemplated by subdivision (b)(4).

In the present case, it appears that the motion justice did not review the documents that Crowe was seeking to protect. Rather, he ruled that all information revealed to a testifying expert was "open for grabs" and that a lawyer is required to be cognizant of that fact when sharing information with experts expected to testify. In so ruling, however, the motion justice was without the benefit of our pronouncement today that opinion work product is not divested of its absolute protection under Rule 26(b)(3) merely because an attorney shares it with a testifying expert witness. We remand this case, therefore, with instructions that a justice of the Superior Court conduct an *in camera* review of the documents subject to the plaintiff's motion for a protective order to determine whether entire documents are discoverable or whether redaction is necessary, in accordance with this opinion.

## Conclusion

For the reasons stated in this opinion, we quash the judgment of the Superior Court. The record shall be remanded to the Superior Court with our decision endorsed thereon.