DECISION
Before the Court in this products liability action is Plaintiff's Motion to Compel Further Production of Archived Information. The Defendants Davol, Inc. ("Davol") and C.R. Bard, Inc. (collectively "Defendants") object to this motion. This Court afforded the parties an opportunity to be heard on February 3, 2011. Jurisdiction is pursuant to G.L. 1956 § 8-2-14.
 I Facts and Travel
The instant matter involves litigation concerning allegations of defects in various models of the Composix Kugel Patches ("CK Patches") manufactured and sold by the Defendants Bard and/or Davol, its wholly owned subsidiary. In their motions, Plaintiffs *Page 2 
Barbara Brokaw, Raymond Mutz, and Tammy Oakley ("Plaintiffs") request this Court to compel Defendants to produce archived hard-copy materials and archived electronically stored information ("ESI") for all documents responsive to any of Plaintiffs' discovery requests. Plaintiffs argue that Defendants' refusal to search and produce their archived hard-copy materials and ESI for the years prior to 2004 has resulted in large gaps in document production. Specifically, they argue that the number of documents produced for the years when Defendants developed, manufactured, and brought the CK Patch to the market, 1999 to 2004, is deficient in comparison to the years after 2004. Furthermore, Plaintiffs aver that the deposition testimony of Defendants' representatives proves that highly relevant and discoverable documents and information were archived and not searched or produced.
In response, Defendant argues that searching all of their ESI archives — in the form of backup tapes — for all documents responsive to any of Plaintiffs' discovery requests is unduly burdensome because those archives store data in a compressed form that is not readily accessible. As a result, they contend this review would cost approximately fourteen million dollars and will unduly burden their trial preparation.
 II Analysis A Hard-Copy Archived Materials
In their motion, Plaintiffs request this Court to compel Defendants to search and produce discoverable and relevant archived hard-copy documents. Plaintiffs argue that Defendants' refusal to search these relevant, archived paper documents has caused large *Page 3 
gaps in document production, specifically for the years 1999 through 2004, when Defendants were manufacturing and developing the CK Patch at issue. At the February 3, 2010 hearing, Defendants responded by distinguishing between the hard copy archived materials and the ESI archives. Defendants contend that they have already searched the hard-copy archives at an off-site storage facility, where documents are stored as required by law or for other record-keeping purposes. Plaintiffs, however, have provided this Court with letters from Defendants' counsel stating that Defendants "did not produce nor do [Defendants] believe [Defendants] were required to produce documents from archives and/or back up tapes."
Plaintiffs also specifically argue that they are entitled to the subject CK Patch's corrective and preventative action files ("CAPA files") for the years prior to 2007. Plaintiffs maintain that these files have yet to be produced and Defendants have no reasonable justification to delay the production of these files any longer. Defendants, however, argue that this discovery request is overbroad and beyond the MDL March 31, 2008 Stipulation and Protective Order ("MDL Order").
The MDL Order[1] states the following:
 "Parties have met and conferred and preliminary agreed to the servers, individuals, databases and locations . . . which have and will be searched for potentially discoverable materials. . . . Should additional sources be identified or searches required, the parties shall meet and confer to the extent reasonably necessary to facilitate these sources inclusion in production before seeking relief from this court." *Page 4 
Thus, the cited portion of the MDL Order allows for discovery of other relevant material, and, therefore, it does not bar all other relevant discovery.
In Rhode Island, litigants have the ability to obtain information "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action" through the discovery process. Super. R. Civ. P. 26(b)(1). Within this process, Rule 34 requires that a party produce discoverable documents in its "possession, custody or control." Super. R. Civ. P. 34(a). Additionally, in the discovery phase of litigation, the concept of relevancy is to be given a liberal application. DeCarvalho v.Gonsalves, 106 R.I. 620, 627, 262 A.2d 630, 634 (1970). Indeed, "the test to be applied is whether the material sought is relevant to the subject matter of the suit, not whether it is relevant to the pleadings." DeCarvalho, 106 R.I. at 627, 262 A.2d at 634. In granting or denying discovery orders, a justice of the Superior Court has broad discretion. See Corvese v. Medco ContainmentServs., 687 A.2d 880, 881 (R.I. 1997).
In light of this broad concept of relevancy, the request for the CAPA files is not overly broad because they are relevant to the subject matter of the suit. See DeCarvalho,106 R.I. at 627, 262 A.2d at 634. Additionally, searching the archives for relevant documents is essential in this case. As Plaintiffs now dispute whether Defendants have performed any searches of the hard-copy off-site archives for relevant information, this Court orders Defendants to do so. If Defendants believe, in good faith, that they have already searched the archives for relevant discovery, they must present this Court with evidence to that effect. *Page 5 
 B Electronically Stored Information 1 Federal Rule of Civil Procedure 26(2)(B) and BackupTapes
Plaintiffs argue that Defendants must search their ESI for relevant discovery because the information contained within this ESI is relevant to the litigation, as evidenced by the comparably small number of documents produced for years prior to 2004. In response, Defendants maintain that this request is unduly burdensome given the extraordinary cost of compliance and low likelihood of locating new information.
As individuals and corporations increasingly rely on computers to compose emails and documents, the universe of discoverable material is also rapidly growing. Zubulake v. UBS Warburg, LLC
(Zubulake I),217 F.R.D. 309, 311 (S.D.N.Y. 2003) (citations omitted). Despite the amount of discovery within electronic sources, ESI is still a novel means of discovery in Rhode Island state courts. Accordingly, this Court will turn to the Federal Rules of Civil Procedure and federal jurisprudence for guidance on the subject.
Rhode Island Superior Court Rule of Civil Procedure 34 allows for the request of production of any designated documents. Both this rule and its federal counterpart[2] define "document" in an inclusive manner so as to allow for "changing technology." Fed.R.Civ.P. 34 advisory committee notes. Therefore, this rule includes not only relevant electronic documents to discovery which are currently in use, "but also [] *Page 6 
documents that may have been deleted and now reside only on backup disks." Zubulake I, 217 F.R.D. at 309.
In 2006, Fed.R.Civ.P. 26 was amended to address this electronic type of discovery. This Rule now provides a burden-shifting test with regard to e-discovery. It first provides that "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed.R.Civ.P. 26(b)(2)(B). Subsequently, "[i]f that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C)." Id. The Rule further provides that the "court may specify conditions for the discovery." Id.
Applying this burden-shifting test to the instant matter, Defendants must first show that their ESI is not reasonably accessible; only then must Plaintiffs show good cause for this discovery. See Conference of Chief Justices Working Group on Electronic Discovery, Guidelinesfor State Trial Courts Regarding Discovery of Electronically-StoredInformation 6 (2006) (sta/ting that trial justices should first examine presumptions regarding "reasonably accessible" and "not reasonably accessible").
 2 Accessibility of Backup Tapes
Defendants argue that their ESI, all in the form of backup tapes, is inaccessible because the tapes must be resorted to be useable, and, therefore, this motion should be denied. Additionally, Defendants argue that Plaintiffs' request is unduly burdensome. Plaintiffs, however, contend that this ESI is, in fact, accessible because Defendants have failed to show undue burden or cost. *Page 7 
In Zubulake I, [3] the court described five types of data: (1) active, online data; (2) near-line data; (3) offline storage/archives; (4) backup tapes; and (5) erased fragmented or damaged data. Zubulake I, 217 F.R.D. at 318-19; see also W.E.Aubuchon Co., Inc. v. BeneFirst, LLC,245 F.R.D. 38, 42 (D. Mass. 2007) (adopting these categories). The first three types of data — (1) active, online data; (2) near-line data; and (3) offline storage/archives — "are typically identified as accessible, and the latter two, [backup tapes and erased fragmented or damaged data] as inaccessible." Zubulake I,217 F.R.D. at 319 (citation omitted). These types of data are grouped as such because the accessible data is stored in a ready to use format; whereas, the inaccessible data is not readily useable.Id. at 319-20 Specifically, backup tapes must be restored by defragmenting data and reconstructing erased data before their information may be used. Id. at 320. The Zubulake I court explained backup tapes as follows:
 "A device, like a tape recorder, that reads data from and writes it onto a tape. Tape drives have data capacities of anywhere from a few hundred kilobytes to several gigabytes. Their transfer speeds also vary considerably . . . The disadvantage of tape drives is that they are sequential-access devices, which means that to read any particular block of data, you need to read all the preceding blocks. As a result, [t]he data on a backup tape are not organized for retrieval of individual documents or files [because] . . . the organization of the data mirrors the computer's structure, not the human records management structure. Backup tapes also typically employ some sort of data compression, permitting more data to be stored on each tape, but also making restoration more time-consuming and expensive, especially given the lack of uniform standard governing data compression." Zubulake I, 217 F.R.D. at 319 *Page 8 
(omissions and alterations in original) (internal citations and quotations omitted)
Accordingly, backup tapes are considered inaccessible data sources.See, e.g., Best Buy Stores L.P. v. DevelopersDiversified Realty Corp., 247 F.R.D. 567, 570 (D. Minn. 2007) (finding backup tapes not to be reasonably accessible because of the high cost to restore); Zubulake, 217 F.R.D. at 319-20.
To evidence the inaccessibility of the ESI production in this case, Defendants have provided an affidavit by Mark MacDonald ("MacDonald"). MacDonald is Defendants' primary account manager from a computer forensics, electronic discovery and information management consulting firm that Defendants retained. In this affidavit, MacDonald testifies that between all of the Davol and Bard offices, 745 backup tapes exist and these backup tapes contain approximately 200 terabytes of compressed data. He explained that to begin the discovery process, these backup tapes would be pulled from storage and loaded to the appropriate device for identification, validation and content indexing. This preliminary process costs $125 per tape.
Once all of these tapes have been searched and tapes with potentially relevant data are identified, data from those tapes will be restored. As a result of the quantity of tapes subject to restoration and extraction, MacDonald explained that Bard could not perform that process internally. Each tape would cost approximately $375 to restore.
After the restoration of that data, the data must be processed; this data is culled and indexed to create a full inventory of all ESI documents and emails. MacDonald estimates that approximately 6336 gigabytes of email data would need to be restored at $390 per gigabyte. The data, then, will need to be hosted on an on-going basis for review. The cost to host per month is $40 per gigabyte. *Page 9 
The responsive data would then have to be prepared for production. This step costs $1580 per gigabyte, and MacDonald estimates about 570 gigabytes will need to be reviewed. The total estimated cost of this entire process is slightly over $4.5 million. Besides that cost, he testified that at least fifty attorneys would need to be dedicated solely to document review and that this process would take over a year to complete. In its motion, Defendants maintain that this discovery would cost over $10 million in attorney time. Accordingly, the final estimated cost would exceed $14.5 million.
As the type of data in this case is backup data, the Court finds that it is not reasonably accessible because it has to be defragmented and restored prior to being searched. See id. Additionally, Defendants' affidavit has further shown that these backup tapes are not reasonably accessible as a result of the time, money, and process required to restore and search this data. See Best BuyStores L.P., 247 F.R.D. at 570; Zubulake I, 245 F.R.D. at 320. Accordingly, this Court finds that Defendants have met their burden under Fed.R.Civ.P. 26(b)(2)(B), by showing that this data is not reasonably accessible.
 3 Good Cause for Discovery of Inaccessible Data
Plaintiff further argues that if this Court finds that this data is not reasonably accessible, Plaintiffs have shown good cause for the production of the requested documents because relevant probative evidence has been withheld from production and may be found in a search of the archived tapes. Specifically, Plaintiffs aver that the lack of documents prior to 2004 demonstrates the need for a search of ESI. In response, *Page 10 
Defendants contend that Plaintiffs cannot show good cause because their request lacks any specificity and they do not have backup tapes for years prior to 2004.
Under Fed.R.Civ.P. 26(b)(2)(B), once Defendants have shown that the source is not reasonably accessible due to undue burden or cost, the burden shifts to the Plaintiffs to show good cause for discovery of such sources considering the limitations of Rule 26(b)(2)(C).[4] The seven following factors inform this good cause analysis:
 "(1) the specificity of the discovery request; (2) the quantity of information available from other and more easily accessed sources; (3) the failure to produce relevant information that seems likely to have existed but is no longer available on more easily accessed sources; (4) the likelihood of finding relevant responsive information that cannot be obtained from other, more easily accessed sources; (5) predictions as to the importance and usefulness of the further information; (6) the importance of the issues at stake in the litigation; and (7) the parties' resources Fed.R.Civ.P. 26(b) advisory committee notes on 2006 amendments. See also Best Buy Stores, L.P., 247 F.R.D. at 571 (adopting this analysis); W.E. Aubuchon Co., Inc., 245 F.R.D. at 43 (adopting this analysis).
Courts should consider these factors in terms of importance, not as a checklist. Zubulake, 217 F.R.D. at 322.
In this case, the discovery request is not specific; instead of narrowly tailoring their request to search ESI, Plaintiffs chose to request a search of all backup tapes for any *Page 11 
relevant material. See W.E. Aubuchon Co., Inc.,245 F.R.D. at 43, 44-45 (finding that plaintiffs were able to show specificity and good cause because they tailored their request from approximately 34,000 ESI files to 3000 ESI files). Additionally, the information sought may be held in the hard copy archives, which are more easily accessible than these backup tapes. Moreover, the likelihood of finding relevant responsive information is not high for the years which Plaintiffs emphasize, those prior to 2004, because Defendants do not have any backup tapes from before 2004.[5] Nevertheless, according to MacDonald's affidavit, some documents from pre-2004 may exist on the first backup tape that was preserved.
Plaintiffs, however, have shown specific instances which evidence the importance and usefulness of this information, as well as some likelihood that this information will be relevant and cannot be found through more easily accessed sources. For example, Plaintiff provided evidence that this request may uncover notes of a Senior Manufacturing Engineer for Davol's AME division that include discussions of and hypotheses on what caused the CK Patch to buckle. Plaintiffs have shown that these notes will likely be archived in Defendants' ESI because Davol's practice was to capture and archive these notes in electronic format per FDA retention guidelines. Additionally, Plaintiffs have provided evidence that a former Staff Quality Manager for Davol's AQE *Page 12 
division testified during a deposition that he was aware of the problems with the CK Patch and deleted all of his email prior to the preservation order. During his deposition, this Staff Quality Manager stated that these deleted emails were kept by Davol in subject-specific files; therefore, these e-mails may be in Defendants' ESI.
Although certain relevant probative documents seem to exist within these backup tapes, the specific references made by Plaintiffs concern files prior to the preservation order. Thus, obtaining these files from the backup tapes is unlikely. Moreover, if these pre-2004 files were archived as a result of FDA compliance, these files would be kept at the hard-copy off-site storage facility, which is more accessible than the backup tapes. Nevertheless, Plaintiffs have shown that there is good cause for some discovery of this ESI because relevant files potentially exist within the backup tapes that cannot be accessed elsewhere. This Court, therefore, grants this motion to compel.
 4 Cost-Shifting and Electronically Stored Information
Ordinarily, "the presumption is that the responding party must bear the expense of complying with discovery requests." Oppenheimer Fund,Inc. v. Sanders, 437 U.S. 340, 358 (1978). The good cause inquiry into ESI discovery, however, is "coupled with the authority to set conditions for discovery." Fed.R.Civ.P. 26(b) advisory committee notes on 2006 amendments. Within those conditions, a court may order the "payment by the requesting party of part or all of the reasonable costs of obtaining information from sources that are not reasonably accessible." Id.
Thus, cost-shifting should not be implemented merely because the discovery sought is electronic. Zubulake I, 217 F.R.D. at 318. Courts may only consider cost-shifting *Page 13 
when the data is not reasonably accessible. See, e.g.,Peskoff v. Faber, 240 F.R.D. 26, 31 (D.D.C. 2007) ("[C]ost-shifting does not even become a possibility unless there is first a showing of inaccessibility."); Watchtel v. Health Net,Inc., 239 F.R.D. 81, 91 n. 23 (D.N.J. 2006) ("[A] court should consider cost-shifting only when electronic data is relatively inaccessible, such as backup tapes."); Zubulake I,217 F.R.D. at 318 (finding that cost-shifting may be necessary when retrieving the information is unduly burdensome because files are inaccessible). Once the data type is held to be inaccessible, courts will analyze a number of factors to determine "how important is the sought-after evidence in comparison to the cost of production?"Zubulake I, 217 F.R.D. at 322-23. These factors include the following:
 "1. The extent to which the request is specifically tailored to discover relevant information;
 2. The availability of such information from other sources;
 3. The total cost of production, compared to the amount in controversy;
 4. The total cost of production, compared to the resources available to each party;
 5. The relative ability of each party to control costs and its incentive to do so;
 6. The importance of the issues at stake in the litigation; and
 7. The relative benefits to the parties of obtaining the information." Id. at 322.[6]
Although this Court concludes that the backup tapes are likely to hold relevant files that cannot be accessed elsewhere, this discovery request is extremely broad, especially when Plaintiffs place their emphasis on missing documents from years that are *Page 14 
not stored within these tapes.[7] As this Court has not heard argument on the cost-shifting issue, it will reserve judgment until further argument.
 III Conclusion
For the foregoing reasons, this Court grants in part Plaintiffs' Motion to Compel further Production of Archived Documents with respect only to the hard-copy archived documents. Defendants must produce the requested CAPA files. Defendants must also search their off-site hard-copy archives for relevant discovery; however, if Defendants have already performed this search, they may provide evidence to this Court to that effect. This Court holds Plaintiffs' Motion to Compel further Production of Archived Documents concerning ESI in abeyance until further argument on cost-shifting. Counsel shall submit appropriate judgment for entry.
[1] The MDL Order "shall apply to all cases currently pending in MDL No. 1842 and to all related actions that have been or will be originally filed in, transferred to, or removed to this Court and assigned thereto." The cases pending in this Court are not federal court cases pending in MDL No. 1842. Nevertheless, this MDL Order is helpful in regulating Defendants' production and Plaintiffs' requests.
[2] "[W]here the federal rule and our state rule of procedure are substantially similar, [Rhode Island courts] will look to the Federal Courts for guidance or interpretation of our own rule." CroweCountryside Realty Assocs., Co., LLC v. Novare Engineers, Inc.,891 A.2d 838, 840 (R.I. 2006).
[3] Zubulake I is recognized as the primary case on ESI discovery in courts throughout the United States. See,e.g., Wiginton v. CB Richard Ellis, Inc.,229 F.R.D. 568, 572 (N.D. Ill. 2004) (recognizing the Zubulake I
court's analysis); W.E. Aubuchon Co., Inc. v. BeneFirst, LLC,245 F.R.D. 38, 41-45 (D. Mass. 2007) (adopting Zubulake I's analysis, as well as that of Fed.R.Civ.P. 26); Ex parte CooperTire Rubber Co., 987 So.2d 1090, 1106 (Ala. 2007) (recognizingZubulake I's cost-shifting factors and accessibility criteria).
[4] Federal Rule of Civil Procedure 26(b)(2)(C) limits otherwise permissible discovery if the court determines that:
 "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."
[5] ESI discovery has also changed the preservation requirements on companies because "[t]he ordinary operation of computers involves both the automatic creation and the automatic deletion or overwriting of certain information." Fed.R.Civ.P. 26(f) advisory committee notes on 2006 amendments. As a result, when developing a discovery plan, parties should discuss the preservation of ESI. Id. In this case, Defendants followed the general preservation rule by beginning to preserve their backup tapes beginning in 2006, when they received knowledge of possible litigation. See Zubulake v. UBS WarburgLLC ("Zubulake II"), 220 F.R.D. 212, 218 (S.D.N.Y. 2003) (stating that as a general rule, "[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a `litigation hold' to ensure the preservation of relevant documents"). In Bard's New Jersey headquarters, backup tapes exist from May 2004, as a result of a litigation hold in another matter. Thus, no issues of spoliation exist in this case.
[6] Some courts have modified this test as they have found relevant.See Ex parte Cooper Tire Rubber Co.,987 So.2d 1090, 1106 (Ala. 2007) (adding to the test the factor: "the importance of the requested discovery in resolving the issue sat stake in the litigation").
[7] Courts also may require the responding party to restore and produce a small sample of data from the requested backup tapes.Wachtel, 239 F.R.D. at 91 n. 23; Zubulake I,217 F.R.D. at 324; see also Fed.R.Civ.P. 26(b) advisory committee notes on 2006 amendments (stating that in cases where parties may know little about the sources identified as not reasonably accessible, "parties may need some focused discovery, which may include sampling of the sources, to learn more about what burdens and costs are involved in accessing the information, what the information consists of, and how valuable it is for the litigation in light of information that can be obtained by exhausting other opportunities for discovery"). In this case, however, Plaintiffs have not only provided the Court with examples of the information that they hope to find, but also, given this broad request, a sample may not be representative of all of the documents. *Page 1